JULIUS GALANTE, Respondent, *v.* HATHAWAY BAKERIES, INC., Appellant.

Fourth Department, July 9, 1958.

*Stephen V. Lines* and *Morton A. Polster* for appellant.

*William J. McDonald* for respondent.

Bastow, J. These appeals present a question of law that appears to be one of first impression in this State. The

basic issue relates to the liability of a tenant for damage by fire to the demised premises alleged to have been caused by the negligence of the lessee. The issue under consideration is the sufficiency as a matter of law of an affirmative defense alleged in the answer of the tenant that the lease agreement contained a provision that the latter should make all necessary repairs to the interior of the demised premises " reasonable wear and tear and damage by fire and unavoidable casualty excepted."

It appears from allegations in the complaint that on January 6, 1956 plaintiff owned certain property in the city of Geneva, which was occupied by the defendant as tenant. On that date the entire interior of the building was destroyed by fire, which it is claimed was caused by the negligence of the tenant. The original answer contained a separate affirmative defense alleging that in March, 1953 the parties had entered into a lease agreement which provided, among other things, the following: " 2. (h) First party (plaintiff-lessor) shall make at his own expense all repairs to the roof and to the exterior of the building and the second party (defendant-lessee) shall make at its own expense all repairs necessary to keep the interior of the building in the same condition as when let including the repair of plumbing, heating and lighting fixtures and equipment, reasonable wear and tear and damage by fire and unavoidable casualty excepted."

This defense was stricken by Special Term upon motion of the plaintiff that it was legally insufficient. Subsequently, defendant moved for leave to serve an amended answer. This proposed pleading in addition to setting forth in the separate defense the heretofore quoted lease provision added new material which in substance alleged that subsequent to the making of the lease agreement plaintiff purchased certain fire insurance policies from named companies by the terms of which plaintiff was to receive reimbursement for partial or total destruction of the premises caused by, among other things, " damage by fire and unavoidable casualty "; that prior to the commencement of the action plaintiff had been paid $10,615.22 for the loss alleged in the complaint. The motion for permission to serve the amended answer was denied and defendant appeals from an order entered thereon and also from the order striking the defense from the original answer.

Thus, it appears from both the answer and proposed amended answer that defendant bases its affirmative defense upon a single clause in the lease. The entire agreement was not made a part of the defense by reference or otherwise. We do not

necessarily attach any significance to this fact but it is stated because it sharpens and narrows the issue to be decided. It is conceded, however, that the agreement was handed up to Special Term and it is apparent from its decision that the entire agreement was considered although it had not been made a part of the motion papers before the court. The lease agreement is also printed in full in the record before us.

An examination of this document discloses that it is an agreement by the terms of which plaintiff was to construct a building, as described therein, upon lands owned by the plaintiff and then lease the property to defendant for a stated term provided the building was ready for occupancy prior to a given date. The terms of the lease to be executed by the parties were set forth in considerable detail. It does not appear that this provision was implemented and a lease executed. The parties, apparently by common assent, have treated the instrument as a lease. It is, of course, an executory contract to enter into a lease, which differs from a present lease in that the former vests no estate in the proposed lessee, while the latter conveys an estate. We shall proceed, however, as the parties have done, under the rule recognizing the proposed lessee in possession under an executory agreement for a lease as a tenant under the terms of the agreement. (51 C. J. S., Landlord & Tenant, §§ 185, 194; cf. *Arnold* v. *Rothschild's Sons Co.,* 37 App. Div. 564, 571, affd. 164 N. Y. 562.)

The issue here presented has been passed upon in one form or another in other jurisdictions. In considering those decisions, however, it is necessary to have in mind certain statutory provisions and rules of law applicable in this State that to some extent differ from the pertinent law elsewhere. At common law the obligation of a landlord to repair or rebuild demised premises rested solely on an express covenant or undertaking. Without such, he was not bound to repair or to pay for repairs made by the tenant (*Witty* v. *Matthews,* 52 N. Y. 512, 514). Similarly, the lessee was held by the obligation of his express covenant to pay rent, although the premises had been actually destroyed (*Vann* v. *Rouse,* 94 N. Y. 401, 405). To ameliorate this harsh rule the Legislature in 1860 (ch. 345) enacted a statute from which present section 227 of the Real Property Law is derived. This section in substance provides that where the leased building is destroyed or rendered unfit for occupancy, and no express agreement in writing has been made, the lessee may quit the premises without further payment of rent " if the destruction or injury occurred without his (the tenant's) fault ". In *Butler* v. *Kidder* (87

N. Y. 98) it was held that the 1860 enactment, in the absence of express agreement to the contrary, not only relieved the lessee from his covenant to pay rent but also released him from a general covenant on the part of the lessee to make all repairs and surrender the premises at the expiration of the term, in as good condition as they were at the commencement, " ' reasonable use and wear thereof, and damage by fire excepted.' " (P. 105.) Of course, the statutory relief only extends to destruction or damage which occurs without fault or negligence on the part of the tenant (cf. *Marcy* v. *City of Syracuse*, 199 App. Div. 246, 250–251).

When the provision of the lease is examined in the light of these principles we find that the parties agreed that the tenant should be relieved of its common-law obligation to make repairs to the roof and the exterior of the building but assumed the obligation to keep the interior of the building in the same condition as when let " reasonable wear and tear and damage by fire and unavoidable casualty excepted." It is alleged in the complaint that the entire interior of the building was destroyed so inasmuch as section 227 of the Real Property Law is incorporated into every lease by inference (*Butler* v. *Kidder, supra*, p. 102) the exception of damage by fire and unavoidable casualty is expressive of the statutory provision. The latter, however, only releases the tenant from his contract obligation and expressly limits the release to damage caused without the tenant's fault.

It is necessary, therefore, to keep in mind the distinction between the defendant's contract obligation and its tort responsibility. (Cf. *Slocum* v. *Natural Prods. Co.*, 292 Mass. 455.) The tenant contends that the lease provision should be broadly construed to exempt it from liability for fire damage whether or not caused by its negligent act. At least prior to 1950 the general rule seems to have been that in construing covenants by a tenant to make repairs or to surrender the premises at the termination of the lease in a particular condition an exception therein for damage by fire would be interpreted as exempting the tenant from damage which was the result of accident but not that which was the result of negligence of the lessee. (36 C. J., Landlord & Tenant, § 867; 51 C. J. S., Landlord & Tenant, § 414; *Brophy* v. *Fairmont Creamery Co.*, 98 Neb. 307; *Carstens* v. *Western Pipe & Steel Co.*, 142 Wash. 259.) The reasoning upon which this rule was formulated is stated in the latter decision (*Carstens* v. *Western Pipe & Steel Co., supra*) where the court said (p. 265) : " The thing for us

to do is to determine what the parties to the lease had in mind, when they provided that the leased property was to be surrendered in good condition, damage by fire excepted. Did that clause mean that the lessee was to be relieved from fires which were the result of its own negligence? We ought not to come to that conclusion, unless the lease definitely and certainly so expresses itself. It would be natural and customary for the lessee to want to escape liability for purely accidental fires, and for the lessors to be willing to grant that relief, but it would not be natural that the lessors would be willing to release the lessee from damages caused by its own active negligence. Such a concession would hardly be looked for in a contract between business men. If the parties intend such a contract, we would expect them to so state in clear terms.''

This statement is expressive of the legal principle well recognized in this State that a contract will not be construed to exempt a party from liability for his negligent acts unless such intention is expressed in unequivocal terms. (*Boll* v. *Sharp & Dohme,* 281 App. Div. 568, 570, affd. 307 N. Y. 646; *Howard* v. *Handler Bros. & Winell,* 279 App. Div. 72, affd. 303 N. Y. 990; *Gordon & Cohen* v. *Rose,* 211 App. Div. 808; 6 Williston on Contracts [rev. ed.], § 1825.) Analogous thereto, and based upon similar reasons, is the rule that a contract will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal language. (*Thompson-Starrett Co.* v. *Otis Elevator Co.,* 271 N. Y. 36, 43.)

The appellant, however, relies heavily upon *General Mills* v. *Goldman* (184 F. 2d, 359, cert. denied 340 U. S. 947) which was an action in tort brought by the lessor to recover damages following the destruction by fire of the leased premises. It was claimed that the fire was caused by the negligence of the defendant lessee. The lease contained the usual clause requiring surrender of the premises in good condition but excepting loss by fire. The trial court granted a recovery and determined as a matter of law that the contract provision did not apply upon a finding that the fire was caused by the tenant's negligence. The Circuit Court reversed and denied recovery. As we construe the court's opinion there was implicit therein an affirmation of the general rule that such a lease provision does not exempt a tenant from liability for a negligently caused fire. Its conclusion, however, denying the owner a recovery, appears to have been influenced by the fact that the lessor had collected the full amount of his insurance coverage, which

was identical with the recent purchase price of the property. Furthermore, the trial court had denied the insurance company the right to be a party to the judgment and upon the trial the lessor's damage had been stipulated to be $142,500. Thus, the owner was in a position to receive a substantial windfall. The decision is further distinguishable by the holding of the court that " Minnesota decisions fully support a contract between private parties relating to their private relationships to relieve one of such parties from liability for his own negligence ". (P. 366.) An examination of the cases cited to sustain this statement reveals that in each it was held that a lease provision exempting a lessor from its own negligence was valid and not against public policy. Such is not the law in this State. To the contrary section 234 of the Real Property Law provides that any such covenant exempting a lessor from his own negligence is void and wholly unenforcible.

The *General Mills* decision has been the subject of considerable discussion in law review articles. Two facets of the case have received attention. First, the tort liability of a tenant in the light of an exception for fire damage in a "repair" or "surrender" clause of a lease and second, the apparent assumption by the court that in the absence of such an exemption a fire insurer subrogated to the rights of the lessor could recover over against the tenant for the latter's negligence in causing the fire. (See 43 Cornell L. Q., 225; 33 N. Y. U. L. Rev. 585; 12 U. Pitt. L. Rev. 452; 18 Ohio St. L. J. 423; 31 B. U. L. Rev. 47; 339 Ins. L. J. 263 [1951].) This second point is not raised directly in the case before us but reference thereto will be made hereinafter.

The decision in the *General Mills* case has been followed by divided courts in Illinois (*Cerny-Pickas & Co.* v. *Jahn Co.,* 7 Ill. 2d 393) and in Ohio (*United States Fire Ins. Co.* v. *Phil-Mar Corp.,* 166 Ohio St. 85). On the other hand, there are cases that have refused to follow the *General Mills* decision or have reached a conclusion contrary thereto. (*Winkler* v. *Appalachian Amusement Co.,* 238 N. C. 589; *Wichita City Lines* v. *Puckett,* 295 S. W. 2d 894 [Tex.]; *Sears, Roebuck & Co.* v. *Poling,* 81 N. W. 2d 462 [Iowa].)

It would serve no useful purpose to analyze these decisions. In summary, it appears that when lessors or their subrogees have been denied a recovery each court has in part placed its decision upon a consideration of the entire lease. Emphasis at times is placed upon the fact that there is a lease provision requiring the lessor to maintain fire insurance on the premises

or a clause requiring the lessee to pay the amount of any premium increase caused by a particular use of the premises. The lease before us contains no such provisions.

It may be inferred, however, from allegations in the proposed amended answer and statements in an affidavit submitted upon the motion for leave to serve such pleading that this is not a direct action between lessor and lessee. Thus, from allegations in the proposed pleading it may be gathered that the plaintiff after the construction of the building obtained fire insurance thereon and following the destruction of the premises was paid the exact amount by the insurers that plaintiff seeks to recover. It is familiar law that upon payment of a loss, the insurer is entitled to be substituted *pro tanto* to any right of action which the insured may have against a third person whose negligence or wrongful act caused the loss. (29 Am. Jur., Insurance, § 1335.) Section 210 of the Civil Practice Act provides, among other things, that an action may be prosecuted in the name of an insured person, who has executed to his insurer a loan or subrogation receipt. In the posture in which the case comes to us we assume that defendant is not attempting to present an issue that plaintiff is not the real party in interest. We conclude that defendant has asserted these additional facts in its proposed answer for the sole purpose of showing as part of its defense that plaintiff has not sustained monetary loss as a result of the fire.

It has heretofore been stated that the lease did not require that either party carry fire insurance upon the property. In some of the decisions statements are found that the cost of such insurance to the lessor is necessarily considered in fixing the amount of the rent. We find nothing in the present record to justify such a conclusion. A policy of fire insurance is a personal contract which does not attach to the property insured nor in any manner run with the land (1 Richards on Insurance [5th ed.], § 13; *Brownell* v. *Board of Educ.*, 239 N. Y. 369, 374; *Merkle* v. *110 Glen Street Realty Corp.*, 282 App. Div. 617, 621).

Therefore, the defendant acquired no rights, either legal or equitable, under the contract of insurance. Our view of the subject is well expressed in the vigorous dissent in the *General Mills* case (184 F. 2d, 359, 373–374, *supra*): '' I think the defendant's contention that it is entitled to have the benefit of the insurance collected by the owners of the property, and that the insurer has no recourse, is without merit. There was nothing in the lease that required the owners to carry insurance for either their own benefit or that of the defendant. There

was no trust relationship existing between the owners and the defendant, and no privity of contract between defendant and the insurer. The policy which the insurer issued was upon a Minnesota Standard form prescribed by statute, * * * Upon payment of the loss, the insurer, by the terms of the subrogation clause of the policy * * * acquired by assignment, to the extent of the amount which it had paid in satisfaction of its policy liability, the rights of its insureds against the defendant. If the defendant was negligent, as the jury found it was, it became indebted to the owners of the leased premises, on the day the building was destroyed, to the extent of $142,500, regardless of whether the building was then covered by insurance or not. That the insurer is entitled to recoup its loss out of what the defendant owes the plaintiff for having negligently destroyed the insured building, is, in my opinion, of no legal concern to the defendant.''

· We recognize, however, that in some of the decisions where the tenant has been exonerated, it appears, at least inferentially, that an insurance company, as subrogee, was attempting to recover from the tenant the amount of a loss paid to a landlord. We see no valid reason to strive to reach such a conclusion in the light of the established legal principles heretofore discussed. A prospective tenant preparing to make a lease may by foresight adequately protect himself against the hazards presented. (See 43 Cornell L. Q., pp. 225–235.)

We conclude that the provision of the lease should be construed in the light of legal principles well settled in this State. The parties to the agreement assumed certain contract obligations. Apart from these each party was subjected to certain tort liabilities. If there was fire damage or destruction to the premises it was agreed that the tenant was not required to repair. The tenant, however, was charged with legal knowledge that if it intended to exempt itself from its own acts of negligence clear and unequivocal language to that effect was required. In the absence thereof, defendant was only released from its contract obligation to repair in the event of an unavoidable fire. Its tort liability for a fire caused by negligence remained. It may not convert the plain language of the lease into an exemption clause protecting itself from tort liability. It follows that the lease provision does not state a legally sufficient defense.

The orders appealed from should be affirmed.

All concur. Present — McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Orders affirmed, with $10 costs and disbursements.