[No. 8333-1-III.   Division Three.   February 23, 1988.]

CASCADE TRAILER COURT, *Appellant,* v. JIM BEESON, ET AL, *Respondents.*

---

*James Perkins* and *Bogle & Gates,* for appellant.

*Frederick Halverson, Halverson & Applegate, Walter G. Meyer, Jr., Meyer & Fluegge, James Berg,* and *Almon, Berg & Adams,* for respondents.

McINTURFF, C.J.—Cascade Trailer Court appeals a summary judgment dismissing its action against Jim Beeson, Scott Smith and Paul Goulet (hereafter tenants). The primary issue concerns whether Cascade's insurer may subrogate against Cascade's tenants for damages paid as a result of a fire.

Cascade had rented a single family dwelling to the three tenants in 1984. Its complaint alleged that in December 1984, one of the tenants negligently left a pan of grease unattended on an electric stove, causing a fire that destroyed the premises.

As a second cause of action, Cascade asserted the existence of a written lease executed by at least one of the tenants in which the tenants agreed to "[n]ot intentionally or negligently destroy . . . any part of the premises . . ." In addition, the lease provided: "Tenant shall . . . upon termination of this occupancy, . . . vacate said premises in as good order and condition they are now in, excepting the reasonable wear and tear thereof." As a third cause of action, Cascade asserted the existence of an oral agreement whereby the tenants agreed they would not negligently damage the premises.

The tenants moved for summary judgment. Scott Smith submitted an affidavit stating he did not sign a written rental agreement, and he was not aware of any such agreement or of any discussions with Cascade regarding the duty to pay for a negligent loss. He further stated Cascade never

advised him to obtain fire insurance for the real property, and he assumed Cascade had obtained insurance.

Cascade also moved for summary judgment. It submitted the affidavit of Mike Majnarich, the manager of the subject property, who attested that a written lease was executed which included the terms quoted above. However, he could not recall whether one or more than one of the tenants actually signed the written lease. The record does not contain the executed lease, only a copy of the lease form.

In a letter opinion, the Superior Court ruled:

> The court will grant summary judgment in favor of defendants [tenants] and will adopt a rule that in a residential landlord/tenant situation, absent an express agreement to the contrary, a lessor's insurer cannot be subrogated to any rights against a tenant for negligently causing a fire.

The court entered an order granting the tenants' motion for summary judgment.

Were the tenants implied coinsureds under Cascade's fire insurance policy, thus defeating the insurer's right of subrogation against them? In 1971, Robert E. Keeton addressed this issue in his treatise on insurance law. R. Keeton, *Insurance Law* § 4.4(b), at 208–10 (1971). In summary, Keeton argues that neither the insurer nor the landlord and tenant expects the insurer to have a right of subrogation against the tenant for negligently caused fires. His evaluation of the insurer's intentions is based on his findings that in the past insurers rarely made such claims, and that policy endorsements waiving subrogation against the tenant can be obtained without incurring an additional premium. He concludes the courts "should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous." R. Keeton, at 210.

Generally, the cases analyzing this issue may be divided into two groups: (a) those holding the landlord's insurance

is presumed to be held for the tenant's benefit as a coinsured in the absence of an express agreement to the contrary, and (b) those holding the tenant liable in a subrogation action in the absence of an express agreement to the contrary. *See Aetna Ins. Co. v. Craftwall of Idaho, Inc.,* 757 F.2d 1030, 1032–33 (9th Cir. 1985), and cases cited therein.

## A
### TENANT IS COINSURED

The most frequently cited opinion in the first group of cases is *Sutton v. Jondahl,* 532 P.2d 478 (Okla. Ct. App. 1975). There, the landlord's fire insurer sued a residential tenant to recover a fire loss resulting from the tenant's negligence. The court held the insurer had no subrogation rights against the tenant of its policyholder. *Sutton,* at 481. It reasoned:

Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary . . . This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance . . . to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate . . . And of course it follows then that the tenant actually paid the premium as part of the monthly rental.

 . . . To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. . . . Perhaps this comes about because the companies themselves have accepted coverage of a tenant as a natural thing. Otherwise their

insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.

. . . [T]o conclude [the tenant is liable] is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire–causing third party not in privity with the insured landlord.

*Sutton,* at 482.

In *Anderson v. Peters,* 142 Ill. App. 3d 182, 491 N.E.2d 768, *appeal denied* (1986), a residential tenant in an apartment under an oral lease negligently caused a fire. The court recognized as a basic proposition that a tenant is liable to the landlord for any injury to the premises resulting from his negligence. *Anderson,* 491 N.E.2d at 769. However, the court was persuaded that public policy considerations must be weighed in reaching a determination of the tenant's liability in these particular circumstances because of the potential for "far reaching" consequences. *Anderson,* 491 N.E.2d at 770. In holding the tenant not liable, the *Anderson* majority adopted the rationale of *Sutton v. Jondahl, supra. Anderson,* 491 N.E.2d at 770–72.

In *Alaska Ins. Co. v. RCA Alaska Communications, Inc.,* 623 P.2d 1216, 1218 (Alaska 1981), the lease provided that the lessee would leave the premises at the expiration of the lease "in as good a condition as received, excepting . . . loss or damage caused by fire . . . provided that such casualty was not caused by the negligent act of the Lessee . . ." Another lease provision required the lessor to maintain fire insurance. The court noted that the trend has been to find that fire insurance was obtained for the benefit of both parties "[a]bsent an express provision in the lease establishing the tenant's liability for loss from negligently started fires . . ." *Alaska Ins.,* at 1218. In the court's view, the redelivery and indemnity clauses in the lease at issue there, when read in conjunction with the insurance clause, failed to clearly establish the tenant's liability for fire damage caused by his own negligence. *Alaska Ins.,* at 1219. In

so holding, the court favorably cited the broad rationale of *Sutton v. Jondahl, supra.*

Like conclusions were reached by the courts in *New Hampshire Ins. Group v. Labombard,* 155 Mich. App. 369, 399 N.W.2d 527 (1986), *appeal denied,* 428 Mich. 911 (1987) and *Safeco Ins. Co. v. Capri,* 101 Nev. 429, 705 P.2d 659 (1985). In *Labombard,* 399 N.W.2d at 530–31, the court construed the rental agreement, which referred, *inter alia,* to the lessees' obligation to observe fire regulations, as evidencing the parties' mutual expectation that fire insurance would be obtained by the lessor. In *Capri,* 705 P.2d at 660–61, the lease provided that the lessee was to maintain the premises and surrender it in good condition, "damage by the elements" excepted. However, the lease agreement also specifically provided that the landlord was to maintain fire insurance. Thus, the court refused to construe the "yield up" clause as establishing the lessee's liability for negligently started fires. *See also Parsons Mfg. Corp. v. Superior Court,* 156 Cal. App. 3d 1151, 203 Cal. Rptr. 419 (1984).

## B
### TENANT IS LIABLE

A succinct criticism of the *Sutton v. Jondahl, supra,* analysis is contained in the dissent in *Anderson,* 491 N.E.2d at 772–73. According to that dissent, it is illogical to conclude the landlord intended to carry the tenant as a coinsured on an insurance policy where the lease does not include an exculpatory clause, the parties have not discussed insurance or tenant liability for negligence, and no other evidence indicates that traditional landlord–tenant law would not apply. It argues that contrary to the assumption in *Sutton,* no proof exists that tenants pay for insurance through rents. Finally, the natural result of *Sutton* is to exonerate any person for any kind of negligence occurring on the rented premises since it is "reason[able] . . . to assume that the owner had taken out insurance for

their protection." *Anderson,* 491 N.E.2d at 189 (Heiple, J., dissenting).

In our research, the most recent decision holding a tenant liable in a subrogation action is *Page v. Scott,* 263 Ark. 684, 567 S.W.2d 101 (1978). There, the tenant negligently caused a fire in a residence leased under an oral agreement. The court found no evidence that the insurance taken by the lessor was also for the benefit of the tenant. *Page,* at 686. Further, the court held inappropriate the fiction that by paying rent the lessee paid the insurance premium. Its view was that "more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents." *Page,* at 688.

The lease construed in *Galante v. Hathaway Bakeries, Inc.,* 6 A.D.2d 142, 176 N.Y.S.2d 87, 91 (1958) had an exculpation clause exempting the tenant from liability for damage by fire, but the court held the clause related only to fires caused *without* the tenant's fault. It relied on the rule that "a contract will not be construed to exempt a party from liability for his negligent acts unless such intention is expressed in unequivocal terms." *Galante,* 176 N.Y.S.2d at 147. *See also Winkler v. Appalachian Amusement Co.,* 238 N.C. 589, 79 S.E.2d 185 (1953). Other cases not involving subrogation have held that a tenant is liable to a landlord for a fire caused by its own negligence absent an express agreement to the contrary. *Acquisto v. Joe R. Hahn Enters.,* 95 N.M. 193, 619 P.2d 1237 (1980); *Poslosky v. Firestone Tire & Rubber Co.,* 349 S.W.2d 847 (Mo. 1961); *Sears, Roebuck & Co. v. Poling,* 248 Iowa 582, 81 N.W.2d 462 (1957).

The precise issue here is one of first impression in Washington. However, three cases have touched on the subject.

In *Rizzuto v. Morris,* 22 Wn. App. 951, 592 P.2d 688, *review denied,* 92 Wn.2d 1021 (1979), this court held that a landlord's insurer was not entitled to subrogation against a commercial tenant who negligently caused a fire. There, the lease contained a clause exempting the lessee from liability for damage by fire. The court considered this exculpatory

clause in conjunction with evidence that the lessor and lessee had discussed fire insurance and the lessor had told the lessee that he carried fire insurance on the leased building. The court concluded the parties intended that the fire insurance cover the lessee. It reasoned:

> In these circumstances, if the lessors did not expect to cover the lessee under their policy, they should have expressly notified the lessee of the need for a second policy to cover its interest. Since they failed to do so, they have no cause of action against the lessee for the fire damage, and the insurance company has no right of subrogation.

(Footnote omitted.) *Rizzuto,* at 958.

In *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.,* 44 Wn. App. 409, 722 P.2d 861 (1986), a tenant's negligence caused a gas explosion which damaged the tenant's leasehold and other portions of the building in which the leasehold was located. By the terms of their lease, the landlord and tenant had waived claims against each other for "losses resulting from . . . fire and other coverages provided by their respective casualty insurance policies . . ." *Millican,* at 411. The landlord brought an action against the tenant for damages. The court held, at page 419, that the waiver barred recovery only as to the insured losses on the leasehold premises. The court's analysis was that:

> [W]here a lease that relates to specified premises does not refer to any other property and does not attempt to state the parties' rights and obligations with respect to any other property, a waiver of responsibility in the lease cannot be extended to relieve the lessee from liability for damage done to property that is not the subject of the lease.

*Millican,* at 418.

Hence, the court concluded "the parties' intent [was] . . . to waive their subrogation rights against each other for risks arising out of the relationship to which they were committing themselves, *viz.,* lessor and lessee, and no other." *Millican,* at 418. According to *Millican,* the loss unrelated to the leasehold was occasioned by a third party

who happened to be the lessee. The court noted that in such circumstances, the lessee's rent payments cannot be deemed to be paying for insurance on separate property, and it would be unfair to deny an insured a right of recourse against the wrongdoer. *Millican,* at 419.

In *Washington Hydroculture, Inc. v. Payne,* 96 Wn.2d 322, 635 P.2d 138 (1981), fire destroyed leased premises. Fault was not alleged by the lessor, who instead sought recovery against the lessee on the basis of a lease provision requiring the lessee to "maintain" the premises and upon expiration of the term surrender the premises in as good a condition as when the lessee took possession. *Payne,* at 323. The court cited the rule that what controls in a lease is the intent of the parties at the time of execution and the plain meaning of the language used. *Payne,* at 328. It concluded:

> "Maintain" does not mean "rebuild". One could agree to surrender premises in as good condition as when possession was taken in conjunction with a clause to maintain, and never contemplate their total destruction requiring rebuilding.

*Payne,* at 329.

■ We are not persuaded by Cascade's general arguments attacking the rationale of *Sutton v. Jondahl,* 532 P.2d 478 (Okla. Ct. App. 1975). Whether rent covers all of a landlord's expenses, including insurance premiums, is not the critical question. Rather, the issue concerns the parties' reasonable expectations. Where the landlord has secured fire insurance covering the leased premises, the tenant can reasonably expect the insurance to cover him as well, unless the parties have specifically agreed otherwise. Why?— because the tenant is in privity of contract with the landlord, and he has a property interest in the premises the insurance protects. This rationale would not extend to cover a tenant for negligence which does not damage the shared property interest, *i.e.,* the leasehold itself. Thus, Cascade's fears that insurers would lose their subrogation rights against tenants who negligently injure other tenants is unfounded.

Here, an issue of fact is created by the affidavits of the one tenant and the apartment manager which contradict each other on whether a written lease was executed. However, this issue of fact is material only if we can say the terms of the written lease indicate an express agreement by the parties to limit the benefit of fire insurance to the landlord.

The pertinent clauses of the lease are those in which the tenant agrees (1) not to negligently destroy any part of the premises, and (2) to yield up the premises at the end of the term in as good condition as when possession was taken, reasonable wear and tear excepted. In *Safeco Ins. Co. v. Capri,* 101 Nev. 429, 705 P.2d 659, 660–61 (1985), the lease contained a "yield up" clause like the one here, and the court held the tenant was an implied coinsured of the landlord's policy. But the lease in *Capri* did not include a covenant respecting the tenant's liability for negligence.

The lease provision in *Alaska Ins. Co. v. RCA Alaska Communications,* 623 P.2d 1216 (Alaska 1981) is closer to what we have here. In *Alaska Ins.,* the "yield up" clause excepted fire damage, but contained a specific proviso that the exception for fire damage did not mean fire damage caused by the lessee's negligence. The court still held that the negligent tenant was the implied coinsured of the landlord's fire insurance policy. According to the court, the redelivery clause did not "clearly establish [the tenant's] liability for fire damage caused by [his] own negligence." *Alaska Ins.,* at 1219.

We hold that the fact that the disputed lease provided the tenants would not negligently destroy the premises does not indicate the parties intended to limit the benefit of the insurance to the landlord. A tenant could sign the written lease at issue and reasonably never contemplate that if the premises were destroyed by a fire he negligently caused, his landlord's insurer could collect damages from him. We adopt the reasonable expectations rationale of the *Sutton* line of cases and hold Cascade is presumed to carry its insurance for the tenant's benefit because the lease did not

688

contain an express provision to the contrary. Although the *Rizzuto–Millican–Payne* decisions of the Washington courts did not need to go this far in reaching their holdings, their general analysis supports a holding here that focuses on the parties' expectations.

The judgment of the superior court is affirmed.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court May 31, 1988.