[796 NYS2d 772]

Phoenix Insurance Company, as Subrogee of the Colleges of the Seneca, Respondent, v Anne Daniels Stamell, Appellant.

Fourth Department, June 10, 2005

## APPEARANCES OF COUNSEL

*Morrison Mahoney LLP*, New York City (*Arthur J. Liederman* of counsel), for appellant.

*Law Office of Laurie G. Ogden*, Syracuse (*Joseph R. Pacheco, II*, of counsel), for respondent.

## OPINION OF THE COURT

HAYES, J.

Plaintiff, Phoenix Insurance Company (Phoenix), as subrogee of the Colleges of the Seneca (Colleges), commenced this action seeking judgment in the amount of the damages sustained by the Colleges for property damage caused by the alleged negligence of defendant, a student at the Colleges. The issue presented on this appeal is one of first impression in New York, i.e., whether a college's fire insurer may recover damages from a student for his or her negligent acts that led to a fire causing property damage to the college. We agree with Phoenix that defendant is not an implied coinsured under the insurance policy issued by Phoenix to the Colleges, and thus we conclude that the order granting Phoenix's motion for partial summary judgment on liability and denying defendant's cross motion for summary judgment dismissing the complaint should be affirmed.

## II

It is undisputed that defendant, while a student at the Colleges, lit a candle at approximately 12:45 A.M. on October 10, 2001 in her room in a student residence hall and then fell asleep. The burning candle caused a fire in her room, and the fire spread to other parts of the residence hall and caused extensive damage. Phoenix paid the sum of $211,231.32 to the Colleges pursuant to its fire insurance policy with the Colleges, and there is a $25,000 deductible on the Phoenix insurance policy.

As a condition of living in a student residence hall, defendant was required to enter into a "Housing Contract" (Contract). The record on appeal contains a housing contract for the 1998-1999 academic year inasmuch as the Contract for the year at issue could not be located, but on the record before us it appears to be undisputed that the terms of the two Contracts are identical. Pursuant to the third paragraph of the Contract, a student

"will be responsible for any loss, damage, repair, or replacement of the furniture and/or to the building that is beyond normal wear and tear during [the] occupancy of this space." Paragraph 10 of the Contract is entitled "Personal Insurance" and provides that "[t]he Colleges can accept no responsibility for the theft, loss, or damage of money, valuables, computers or any personal property of students in either the student's residence hall space or any Colleges'[s] storage area."

In addition, each student was required to comply with the provisions set forth in the "Handbook of Community Standards" (Handbook) for the academic year at issue. The Handbook contains a section entitled "Residential Policies" and, pursuant to paragraphs three and four of the portion of that section entitled "Damage," the Colleges

> "charge all students who are responsible for avoidable damages and losses that occur in student residence halls. 'Avoidable damage' is defined as damage that is the consequence of careless, willful, or malicious actions, including horseplay and residence hall 'athletics.' . . .

> "Students will be notified of damage billings and should make payments for damage directly to the Student Accounts Office within 10 working days after receipt of notice of amount due."

In addition, the Residential Policies section of the Handbook contains a paragraph entitled "Theft of, and Damage to, Personal Belongings." Pursuant to that paragraph, the Colleges "will not assume financial responsibility for personal belongings that are damaged or stolen unless gross negligence on the part of the institution can be shown. Since the Colleges'[s] insurance does not cover personal belongings, students are advised to purchase personal insurance for these items."

Finally, the paragraph entitled "Fire Safety" in the Residential Policies section of the Handbook contains a subparagraph entitled "Open flames and burning." Pursuant to that subparagraph, "[t]he use of open-flame devices or other burning materials, such as candles and incense, and the melting of wax to fabricate candles, is prohibited. Such materials will be confiscated. Students found responsible for setting fires may expect to be separated permanently from the Colleges."

At the time of the incident, defendant was insured under her parents' homeowner's policy issued by Safety Indemnity

Company (Safety). Phoenix demanded payment from Safety, but Safety denied liability on the ground that defendant was an implicit coinsured under Phoenix's policy issued to the Colleges. Phoenix thereafter commenced this action as subrogee of the Colleges, seeking to recover from defendant, inter alia, the amount it paid to the Colleges ($211,231.32). In her answer, defendant asserted as a third affirmative defense that the action is "barred by reason of [her] status as a tenant in kind as a student occupant in the premises" and as an "express or implicit" coinsured under Phoenix's policy.

Phoenix moved for partial summary judgment on liability, and defendant cross-moved for summary judgment dismissing the complaint. We conclude that Supreme Court properly granted Phoenix's motion and denied defendant's cross motion. Phoenix established as a matter of law that defendant was negligent and that her negligence caused the damage. Indeed, in opposition to the motion and in support of her cross motion, defendant did not dispute the facts underlying her alleged negligence or its causal connection to the damage at issue. Rather, she contended only that she could not be sued because she was an implied coinsured under the policy.

### III

"Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (*Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654, 660 [1997]; *see North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 294 [1993]; *Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 471 [1986]). "A third party, by definition, is one to whom the insurer owes no duty under the insurance policy through which its loss was incurred" (*Pennsylvania Gen. Ins. Co.*, 68 NY2d at 471). Pursuant to the subrogation doctrine, once Phoenix made payment to the Colleges, its insured, Phoenix had the right of subrogation against defendant, a negligent third party (*see North Star Reins. Corp.*, 82 NY2d at 294).

Defendant contends, however, that the antisubrogation rule prohibits Phoenix from asserting its right of subrogation against defendant. Pursuant to the antisubrogation rule, "an insurer cannot be a subrogee against its insured on the very claim for which the insured was covered" (*Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363, 373 [1998]; *see Pennsylvania*

*Gen. Ins. Co.*, 68 NY2d at 471). The Phoenix policy did not name students living in the student residence halls as insureds under the policy. Nevertheless, defendant contends that provisions of the Contract and Handbook establish that she was an implied coinsured under the Phoenix policy. We reject that contention. Defendant correctly notes that, pursuant to the Handbook, students were required to have some form of health insurance and were advised to purchase personal insurance for their personal belongings, but they were neither advised nor required to purchase personal liability insurance. We conclude, however, that the fact that students were advised that the Colleges would not assume financial responsibility for damaged personal belongings was sufficient to place students on notice that they would not be named as insureds under the Colleges's policy of insurance. Nowhere do the Contract and the Handbook represent that a student would not be responsible for damages caused by his or her own negligent acts. To the contrary, the Contract provided that the student "will be responsible for any loss, damage, repair, or replacement of the furniture and/or to the building that is beyond normal wear and tear during [his or her] occupancy of this space." Moreover, the Handbook provided that the students were financially responsible for damages and losses in the student residence halls that were caused by their "careless, willful, or malicious actions."

## IV

As previously noted herein, this is a case of first impression in New York. Nevertheless, we conclude that cases involving landlord/tenant relationships are analogous to the college/student resident relationship herein, and there are cases in New York that have addressed the right of a landlord or tenant to recover from the other for fire damage, and the right of a landlord's insurer to recover from the tenant.

In *Galante v Hathaway Bakeries* (6 AD2d 142 [1958]), a case decided by this Court, a landlord commenced an action against his tenant seeking to recover for damages to the premises resulting from a fire allegedly caused by the negligence of the tenant. Supreme Court previously struck the affirmative defense of the tenant asserting that, pursuant to the lease, the tenant was required to make necessary repairs to the interior of the premises, " 'reasonable wear and tear and damage by fire and unavoidable casualty excepted' " (*id.* at 144). The tenant thereafter moved for leave to amend its answer to reassert the previ-

ously stricken language and to add that, "subsequent to the making of the lease agreement [the landlord] purchased certain fire insurance policies from named companies by the terms of which [the landlord] was to receive reimbursement for partial or total destruction of the premises caused by, among other things, 'damage by fire and unavoidable casualty' " and that, before commencing the instant action, the landlord had been paid over $10,000 for the loss alleged in the complaint (*id.*). In affirming both the order denying the tenant's motion for leave to serve an amended answer and the prior order striking the initial affirmative defense, this Court determined that, if the tenant intended to exempt itself from its own acts of negligence, clear and unequivocal language to that effect in the lease was required, and there was no such language (*see id.* at 150). We thus concluded that, "[i]n the absence thereof, [the tenant] was only released from its contract obligation to repair in the event of an unavoidable fire[, and i]ts tort liability for a fire caused by negligence remained" (*id.*).

In *USAA Cas. Ins. Co. v Brown* (206 AD2d 470 [1994]), the Second Department affirmed an order that, following a nonjury trial, granted the tenant's motion to dismiss the complaint on the ground that the landlord's insurer failed to establish its right of subrogation against the tenant. The Court wrote that the fact "[t]hat a contributing cause of the loss may have been the tenant's negligence, a risk apparently covered under the unproduced policy of insurance, does not affect the obligation of the insurer to the tenant, apparently a coinsured, under the policy" (*id.*, citing, inter alia, *New York Bd. of Fire Underwriters v Trans Urban Constr. Co.*, 60 NY2d 912 [1983]). In *USAA Cas. Ins. Co.*, however, the insurer failed to name the insureds under the policy in the complaint and, as previously noted, the policy was not produced at trial (*see id.*). It is implicit from that decision that, without producing the policy, the insurer could not establish that the tenant was *not* an insured under the policy and thus could not establish its right to subrogation. Indeed, in *New York Bd. of Fire Underwriters* (60 NY2d at 915), cited by the Second Department in support of its holding in *USAA Cas. Ins. Co.*, a contractor therein was named with the State of New York "as parties insured 'as their interests may appear' in builder's all-risk insurance policies procured by the State." In this case, defendant was not named as an insured in the Phoenix policy.

In *Viacom Intl. v Midtown Realty Co.* (235 AD2d 332 [1997]), the First Department affirmed an order that, inter alia, denied

the motion of defendant landlord to amend its answer to assert as an affirmative defense that it was immune from subrogation by the insurers of plaintiff tenant. The First Department rejected the contention of defendant landlord that it was "an 'implied co-insured' under the policies" issued to plaintiff tenant, holding that "such a doctrine has never been recognized in this State, and there is nothing in the policies to indicate an intention to cover the landlord's insurable interest in the leasehold improvements" (*id.* at 333).

Defendant relies on *Fireman's Ins. Co. of Newark, N.J. v Wheeler* (165 AD2d 141 [1991]), a case decided by the Third Department. Although that case did not involve a landlord/tenant relationship, it has been cited by courts in other states in the landlord/tenant context (*see e.g. Neubauer v Hostetter*, 485 NW2d 87, 88 n 1 [Iowa 1992] [citing *Galante* (6 AD2d 142, 149 [1958]) and *Fireman's Ins. Co.* (165 AD2d 141, 143-145 [1991]) in noting that "(t)he New York appellate divisions are . . . split" on the issue whether a tenant is considered a coinsured of the landlord absent an express agreement to the contrary and thus whether subrogation is available to the insurer of the landlord]).

In *Fireman's Ins. Co.*, a closely held corporation owned a brass foundry that was damaged by fire. The corporation's insurer paid for the damage and then brought a subrogation action against defendant, the president of the corporation, alleging that the fire was caused by his negligent acts (*see* 165 AD2d at 143). The Third Department determined that the insurer had no right of subrogation against defendant, an additional insured under the policy, based on "the equitable principles and public policy considerations underlying the denial of any right of subrogation by an insurer against an additional insured under its policy" (*id.*). In deeming defendant an additional insured, the Court noted that he expressly was an additional insured under the policy for up to $2,500 with respect to any fire loss of his personal effects at the foundry; he was a named insured on the automobile liability coverage of the policy; he would have been insured under the policy if he had caused a fire at other premises while acting within the scope of his duties with the corporation; and the insurer must be presumed to have known when it issued the policy that defendant was the president and principal shareholder of the closely held corporation and that the corporation could act only through its officers and employees (*see id.* at 144-145). Finally, the Court noted that defendant,

as the principal officer, "has been placed in the dilemma of having to furnish the necessary information [concerning the circumstances of the loss to the insurer] and to fully cooperate in [the insurer's] efforts to recover the loss from him personally or forfeit his corporation's policy right to indemnity for the loss" (*id.* at 146). The Court thus concluded "that the compromise of the integrity of the insurer's relationship with its insured and the potential conflict of interest inherent in this dilemma forced upon defendant by [the insurer] require denial of [the insurer's] right of subrogation here" (*id.*).

In the case before us on this appeal, defendant was not named in Phoenix's policy and, in contrast to the seven employees employed by the closely held corporation in *Fireman's Ins. Co.*, there were hundreds of residential students at the Colleges (*see id.* at 142).

## V

Regardless of the decision of this Court in *Galante*, defendant urges us to join the majority of other states in which the anti-subrogation rule bars insurers of landlords from seeking subrogation from tenants absent an express agreement in the lease to the contrary. This holding was first adopted in *Sutton v Jondahl* (532 P2d 478, 479 [Okla 1975]), a case in which the landlords' fire insurance carrier sued a tenant and his son to recover damages from a fire. The Oklahoma Court of Appeals held that the insurer was not entitled to subrogation "because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary" (*id.* at 482). In so holding, the court reasoned that the tenant paid the insurance premium as part of the monthly rental payments and that "[p]rospective tenants ordinarily rely upon the [landlord] to provide fire protection for the realty . . . absent an express agreement otherwise . . . [that would] inure to [their] benefit" (*id.*). As noted, the majority of other states have adopted the result in *Sutton* that, "absent an express provision in a lease establishing a tenant's liability for loss from a negligently started fire, the landlord's insurance is deemed held for the mutual benefit of both parties" (*Peterson v Silva*, 428 Mass 751, 753, 704 NE2d 1163, 1165 [1999]; *see e.g. Allstate Ins. Co. v Watson*, 2005 WL 457846, *6-7, 2005 Tenn App LEXIS 126, *17-18 [Tenn Ct App, Feb. 25, 2005]; *Tri-Par Invs., L.L.C. v Sousa*, 268 Neb 119, 130-131, 680 NW2d 190, 199 [2004]; *Cambridge Mut. Fire Ins. Co. v Crete*, 150 NH 673, 846 A2d 521

[2004]; *North Riv. Ins. Co. v Snyder*, 804 A2d 399, 400 [Me 2002]; *DiLullo v Joseph*, 259 Conn 847, 853, 792 A2d 819, 822 [2002]; *Lexington Ins. Co. v Raboin*, 712 A2d 1011, 1016-1017 [Del 1998], *affd* 723 A2d 397 [Del 1998]; *GNS Partnership v Fullmer*, 873 P2d 1157, 1163-1164 [Utah 1994]; *Community Credit Union of New Rockford, N.D. v Homelvig*, 487 NW2d 602, 605 [ND 1992]; *Cascade Trailer Ct. v Beeson*, 50 Wash App 678, 687-688, 749 P2d 761, 766 [1988], *review denied* 110 Wash 2d 1030 [1988]; *New Hampshire Ins. Group v Labombard*, 155 Mich App 369, 376-377, 399 NW2d 527, 531 [1986]; *Alaska Ins. Co. v RCA Alaska Communications, Inc.*, 623 P2d 1216, 1218 [Ala 1981]).

Other states, however, have rejected the *Sutton* doctrine and instead have held that there must be a "clear and unequivocal expression exonerating the tenant from liability from negligent conduct" (*Britton v Wooten*, 817 SW2d 443, 447 [Ky 1991]; *see also New Hampshire Ins. Co. v Hewins*, 6 Kan App 2d 259, 260, 261-262, 627 P2d 1159, 1161 [1981]; *Sears, Roebuck & Co. v Poling*, 248 Iowa 582, 588-589, 81 NW2d 462, 465-466 [1957]). In *Neubauer v Hostetter* (485 NW2d 87, 90 [Iowa 1992]), the Supreme Court of Iowa held that the landlord and the tenant have "separate estates capable of being separately valued and separately insured." In *Page v Scott* (263 Ark 684, 687-688, 567 SW2d 101, 103-104 [1978]), the Supreme Court of Arkansas wrote that "[t]he fiction that by paying the rent, the lessee paid the insurance premium is not appropriate. . . . Such a fiction ignores the fact that more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents." The court noted that, if there had been no insurance, the landlord's "right to recover would have been beyond question" (263 Ark at 686, 567 SW2d at 103). The court also rejected the argument that recovery by the insurer from the tenant would result in a windfall to the insurer; the court noted that "[t]he same might be said about a recovery from a third party liable because of negligently causing a fire" (263 Ark at 688, 567 SW2d at 104). Similarly, in *Zoppi v Traurig* (251 NJ Super 283, 288, 598 A2d 19, 21 [1990]), the court found

> "no binding case law or reason in common sense that would hold that where the landlord would have had a claim against a tenant, the existence of insurance obtained by [the] landlord, paid for by [the] landlord from [the] landlord's own unrestricted funds, and for the benefit of the landlord should

exculpate the tenant from the consequence of negligent conduct—absent an express agreement to that effect."

## VI

The cases from other jurisdictions establish that there are conflicting policy arguments on both sides of the issue whether a tenant should be deemed a coinsured under the landlord's policy (*see Aetna Ins. Co. v Craftwall of Idaho, Inc.*, 757 F2d 1030, 1033-1034 [9th Cir 1985]). In our view, the law as well as public policy considerations in New York support the right of Phoenix to maintain this subrogation action against defendant, just as the landlord in *Galante* was allowed to recover from his tenant. It is of course well established in New York that "contracts may not be construed to exempt parties from the consequences of their own negligence in the absence of express language to that effect" (*Ciofalo v Vic Tanney Gyms*, 10 NY2d 294, 297 [1961]; *see e.g. Gross v Sweet*, 49 NY2d 102, 106 [1979]; *Fendley v Power Battery Co.*, 167 AD2d 260, 261-262 [1990]; *Galante*, 6 AD2d at 147). Here, there was no express language in the Contract or the Handbook exempting defendant from the consequences of her own negligence. The Phoenix policy was a personal contract between Phoenix and the Colleges, and defendant acquired no rights thereunder (*see Galante*, 6 AD2d at 149-150).

The principles underlying the subrogation doctrine and the antisubrogation rule in New York also do not support the contention of defendant that she is an implied coinsured under the Phoenix policy. As the Court of Appeals has written, "the principle of subrogation ought to be liberally applied to protect its beneficiaries . . . and to achieve its objectives" (*Jefferson Ins. Co. of N.Y.*, 92 NY2d at 373 [internal quotation marks omitted]). "Subrogation allocates responsibility for the loss to the person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage" (*North Star Reins. Corp.*, 82 NY2d at 294). Here, defendant's negligent act caused the fire and Phoenix, which paid the Colleges a substantial sum for the fire damage, is entitled to recover from defendant, the negligent third party. Defendant contends that to allow Phoenix to shift its loss to defendant would result in an unintended windfall to Phoenix. In our view, however, to prevent Phoenix from recovering from defendant would result in a windfall to defendant's insurer.

As the Court of Appeals has written, "[p]ublic policy requires [the antisubrogation rule] both to prevent the insurer from passing the incidence of loss to its own insured and to guard against the potential for conflict of interest that may affect the insurer's incentive to provide a vigorous defense for its insured" (*id.* at 294-295; *see Jefferson Ins. Co. of N.Y.*, 92 NY2d at 373; *Pennsylvania Gen. Ins. Co.*, 68 NY2d at 471-472). Those policy considerations are not at issue in this case. There was no relationship between Phoenix and defendant (*cf. Fireman's Ins. Co.*, 165 AD2d 141 [1991]); defendant was not named as an insured in the Phoenix policy and Phoenix owed no duty to her. Indeed, defendant was insured by a different insurer under the homeowner's policy purchased by her parents for the risk of damage caused by her negligence and, "thus, the public policy considerations underlying the antisubrogation rule are inapplicable" (*McCreedy & Schreiber v 37 W. 46th St. Realty Corp.*, 228 AD2d 174, 174 [1996]). In addition, unlike in *Fireman's Ins. Co.* (165 AD2d at 145), we perceive no potential for conflict of interest in this case.

## VII

We therefore hold that, in accordance with the law and public policy in New York, clear and unequivocal language was required in the Contract and/or Handbook between defendant and the Colleges in order for defendant to be exempt from the consequences of her own acts of negligence. Because there was no such language here, Phoenix may assert its right of subrogation against defendant. Defendant is not an implied coinsured under the policy issued by Phoenix, and thus the antisubrogation rule does not apply to bar this subrogation action. Accordingly, we conclude that the order granting Phoenix's motion for partial summary judgment on liability and denying defendant's cross motion for summary judgment dismissing the complaint should be affirmed.

SCUDDER, J.P., KEHOE, SMITH and PINE, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed, without costs.