[No. 40231-9-II. Division Two. September 20, 2011.]

COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC.,
*Appellant*, v. HAROLD E. KALLES ET AL., *Respondents*.

*Shaun I. Huppert* (of *Huppert Law Firm PLLC*) (*Daniel J. de Luca* of *Nelson Levine de Luca & Horst LLC*, of counsel), for appellant.

*Alfred E. Donohue* (of *Wilson, Smith, Cochran & Dickerson*), for respondents.

¶1 Johanson, J. — Community Association Underwriters of America (CAU) appeals the trial court's grant of summary judgment in favor of Harold Kalles, Deborah Kalles, Derek Kalles, Michael Quinn, and Lease Police Inc. (collectively the Kalleses). CAU brought a subrogation claim against the Kalleses, alleging that they negligently started a fire in a unit they rented from Paul and Kathy Elkins. The Kalleses successfully moved for summary judgment on the

theory that they were the Elkinses' implied coinsured. They also obtained an attorney fee award. On appeal, CAU argues that (1) the trial court erred in granting summary judgment because the Kalleses were not the Elkinses' coinsured under CAU's policy and (2) the trial court improperly awarded the Kalleses attorney fees. We affirm.

## FACTS

¶2 Harbour Commons is a seven-unit commercial building in Gig Harbor. The Elkinses own unit F and operated a business, Lease Police Inc., there until November 2007, when they sold the business to the Kalleses. The Kalleses leased unit F from the Elkinses. In January 2009, a fire started in unit F, causing significant damage. The local fire department did not determine the specific cause of the fire but noted that it was likely associated with the space heater.

¶3 The Harbour Commons "Declaration and Covenants, Conditions, Restrictions, and Reservations" (condominium declaration) established a board (Board) to manage the condominium. Clerk's Papers (CP) at 109 (capitalization omitted). The condominium declaration required the Board to

obtain and maintain at all times as a common expense a policy or policies and bonds required to provide

a. Fire insurance . . . in an amount as equal to the full insurable replacement value . . . of the common and limited common areas and the condominium units, with the Board named as insured as trustee for the benefit of owners and mortgagees as their interest may appear.

CP at 66.[1]

---

[1] Similarly, the condominium declaration also stated:

The Board . . . for the benefit of the condominium and the owners, shall enforce the provisions of the Declaration and . . . shall acquire and shall pay for out of

¶4 The Board obtained fire insurance through CAU. CAU's fire insurance policy named the insured, "Harbour Commons, A Condominium," and provided coverage "for one two-story frame office condominium building containing twelve professional units." CP at 177-78 (capitalization omitted).

¶5 CAU paid for the fire damage to the Harbour Commons and then sued the Kalleses as subrogee of Harbour Commons. Alleging that the Kalleses negligently caused the fire, CAU sought to recover from the Kalleses the money that it paid under the Harbour Commons insurance policy.

¶6 The Kalleses moved for summary judgment, arguing that they were entitled to judgment as a matter of law because they were a coinsured under the CAU insurance policy and because Washington law prohibits an insurer from suing its insured. The trial court granted summary judgment in favor of the Kalleses and dismissed CAU's lawsuit. The Kalleses then requested the trial court grant them attorney fees for defending CAU's lawsuit. The trial court granted their request and awarded $9,433.50 in attorney fees. CAU appeals.

## ANALYSIS

### I. Subrogation

¶7 The first question before us is whether the trial court properly granted the Kalleses' motion for summary judgment. We review an order granting summary judgment de novo and engage in the same inquiry as the trial court. *Weden v. San Juan County*, 135 Wn.2d 678, 689, 958 P.2d 273 (1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

the common expense fund . . . all goods and services . . . including . . . (b) Policies of insurance or bonds providing coverage for fire and other hazard, liability for personal injury and property damage.
CP at 54.

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view the facts and any reasonable inferences from those facts in the light most favorable to the nonmoving party. *Fed. Way Sch. Dist. No. 210 v. State*, 167 Wn.2d 514, 523, 219 P.3d 941 (2009).

¶8 CAU maintains that the trial court erred in ruling as a matter of law that CAU could not assert a subrogation claim against the Kalleses. Subrogation is an equitable doctrine, the purpose of which is to provide for a proper allocation of payment responsibility. *Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632 (1998). "It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it." *Mahler*, 135 Wn.2d at 411. "An insurer entitled to subrogation stands in the shoes of the insured and is entitled to the same rights and subject to the same defenses as the insured." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424, 191 P.3d 866 (2008) (citing *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1292, 77 Cal. Rptr. 2d 296 (1998)). " 'No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty.' " *Mahler*, 135 Wn.2d at 419 (quoting *Stetina v. State Farm Mut. Auto. Ins. Co.*, 196 Neb. 441, 243 N.W.2d 341, 346 (1976)).

¶9 Subrogation has two features. The first is the right to reimbursement, and the second is the mechanism for the enforcement of the right. *Mahler*, 135 Wn.2d at 412. The right to reimbursement, which is at issue here, may arise by operation of equity in law or by contract. *Mahler*, 135 Wn.2d at 412.

¶10 Three approaches emerge from the other jurisdictions that have addressed whether an insurance carrier should be subrogated to the rights of the landlord against an allegedly negligent tenant. A minority of the courts

follow the rule that absent a clear contractual expression to the contrary the insurance carrier may sue a tenant for the insurer's subrogated interest. *See, e.g., Neubauer v. Hostetter*, 485 N.W.2d 87 (Iowa 1992). Other jurisdictions have adopted a case-by-case approach, and they determine whether an insurer may assert a subrogation interest against the tenant based on the reasonable expectations of the parties under the facts of the case. *See, e.g., Fire Ins. Exch. v. Hammond*, 83 Cal. App. 4th 313, 99 Cal. Rptr. 2d 596, 600-01 (2000). Under the third approach, which is called the *Sutton* rule,[2] courts hold that absent a clearly expressed agreement to the contrary, the law presumes a tenant to be a coinsured on the landlord's insurance policy, and therefore the landlord's insurance carrier has no right of subrogation against the negligent tenant. *Sutton v. Jondahl*, 1975 OK CIV APP 2, 532 P.2d 478, 482. *Cascade* is the only published Washington case addressing whether an insurance company may claim a subrogation interest against a tenant for negligently causing damage. *Cascade Trailer Court v. Beeson*, 50 Wn. App. 678, 686, 749 P.2d 761, *review denied*, 110 Wn.2d 1030 (1988). In *Cascade*, Division Three of this court considered whether Cascade's insurer could claim a subrogation interest against three of Cascade's tenants for damages paid as the result of a fire. *Cascade*, 50 Wn. App. at 679. After examining *Sutton* and other cases—both supporting and opposing the *Sutton*

---

[2] At least 15 jurisdictions follow the *Sutton* rule. *See, e.g., Alaska Ins. Co. v. RCA Alaska Commc'ns, Inc.*, 623 P.2d 1216, 1218 (Alaska 1981); *DiLullo v. Joseph*, 259 Conn. 847, 792 A.2d 819 (2002); *Lexington Ins. Co. v. Raboin*, 712 A.2d 1011, 1016 (Del. Super. Ct. 1998); *N. River Ins. Co. v. Snyder*, 2002 ME 146, 804 A.2d 399, 403-04; *Peterson v. Silva*, 428 Mass. 751, 704 N.E.2d 1163, 1164 (1999); *N.H. Ins. Grp. v. Labombard*, 155 Mich. App. 369, 399 N.W.2d 527, 531 (1986); *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87, 89 (Minn. Ct. App. 1993); *Tri-Par Invs., LLC v. Sousa*, 268 Neb. 119, 680 N.W.2d 190, 195 (2004); *Safeco Ins. Co. v. Capri*, 101 Nev. 429, 705 P.2d 659, 661 (1985); *Cambridge Mut. Fire Ins. Co. v. Crete*, 150 N.H. 673, 846 A.2d 521 (2004); *Cmty. Credit Union of New Rockford, N.D. v. Homelvig*, 487 N.W.2d 602, 605 (N.D. 1992); *Sutton v. Jondahl*, 1975 OK CIV APP 2, 532 P.2d 478, 482; *Dattel Family Ltd. P'ship v. Wintz*, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007) ; *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1163 (Utah Ct. App. 1994); *Cascade Trailer Court v. Beeson*, 50 Wn. App. 678, 686, 749 P.2d 761, *review denied*, 110 Wn.2d 1030 (1988).

approach—the *Cascade* court held that "[w]here the land-lord has secured fire insurance covering the leased prem-ises, the tenant can reasonably expect the insurance to cover him as well, unless the parties have specifically agreed otherwise." *Cascade*, 50 Wn. App. at 686. The court reasoned that a tenant could reasonably expect that his landlord's fire insurance would cover him, unless agreed otherwise, because the tenant is in privity of contract with the landlord and has a property interest in the premises the insurance protects. *Cascade*, 50 Wn. App. at 686.

¶11 The *Cascade* court then considered whether the parties expressly agreed in the written lease to limit the benefit of fire insurance to the landlord. *Cascade*, 50 Wn. App. at 687. At least one of the three tenants had agreed to a lease that prohibited him from " 'intentionally or negli-gently destroy[ing] . . . any part of the premises' " and that required him to " 'vacate said premises in as good order and condition they are now in, excepting the reasonable wear and tear thereof.' " *Cascade*, 50 Wn. App. at 679 (second alteration in original). The court held that a tenant could sign this lease and never reasonably contemplate that his landlord's insurer could collect damages from him if he negligently caused a fire that destroyed the premises. *Cascade*, 50 Wn. App. at 687. Therefore, the *Cascade* court stated, "We adopt the reasonable expectations rationale of the *Sutton* line of cases and hold Cascade is presumed to carry its insurance for the tenant's benefit because the lease did not contain an express provision to the contrary." *Cascade*, 50 Wn. App. at 687-88.

¶12 We adopt *Cascade*'s reasoning and hold that the law presumes a tenant to be the landlord's coinsured absent an express agreement between them to the con-trary. *Cascade*, 50 Wn. App. at 686-87. The *Sutton* rule recognizes the reality that both the landlord and the tenant have an insurable interest in the rented premises, where the landlord has an ownership interest, and the tenant has a possessory interest. *Cascade*, 50 Wn. App. at 686. As

*Cascade* acknowledged, the tenant reasonably expects that the landlord's fire insurance will cover him as well. *Cascade*, 50 Wn. App. at 687.

¶13 CAU attempts to distinguish *Cascade*. CAU first points out that *Cascade* dealt with a residential lease, as opposed to a commercial lease, which is at issue here. CAU fails to offer any authority to support this position. We hold that it is a distinction without difference.

¶14 CAU next argues that unlike *Cascade*, in which the insured was the landlord, CAU's insured was the Board, which was not a party to the lease between the Elkinses and the Kalleses. In short, CAU contends that the *Sutton* rule is inapplicable where the insurer does not have a direct contractual relationship with the landlord. Again, CAU's argument is not persuasive.

¶15 The policy's named insured was Harbour Commons because the condominium declaration required the Board to obtain fire insurance "as trustee for the benefit of the owners." CP at 133. Even though CAU did not bargain directly with the Elkinses to insure them, CAU bargained with their trustee, the Board, to insure the Harbour Commons. Nothing in this arrangement changes the reasonable expectation analysis.

¶16 There can be no question that the insurance policy served to benefit the Elkinses. The Kalleses were in privity of contract with the Elkinses and shared a property interest in the leased unit. Therefore, the Kalleses had reason to expect that the Elkinses' fire insurance policy would cover them as well. *See Cascade*, 50 Wn. App. at 686-88. "Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests *of all joint owners* including the possessory interests of a tenant absent an express agreement by the latter to the contrary." *Sutton*, 532 P.2d at 482 (emphasis added).

¶17 The remaining question is whether the parties had an express or implied agreement requiring the Kalleses to obtain fire insurance. Because nothing in the record indicates such an agreement, we hold that the law presumes that the Kalleses were the Elkinses' coinsured. We affirm the trial court's grant of summary judgment.

## II. ATTORNEY FEES

¶18 The next issue is whether the trial court properly granted the Kalleses attorney fees. The Kalleses requested fees at trial, and now for defending this appeal, under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). CAU argues that the equitable principles discussed in *Olympic Steamship* do not apply here and that the trial court erred in granting the Kalleses attorney fees.

¶19 In Washington, absent a contract, statute, or recognized ground in equity providing for fee recovery, a court has no power to award attorney fees. *Dayton v. Farmers Ins. Grp.*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). *Olympic Steamship* recognized one such equitable ground: an insured that successfully sues an insurer to obtain coverage may recover reasonable attorney fees that the insured necessarily incurred in the litigation. *Olympic S.S.*, 117 Wn.2d at 52-53. The court specifically held, "An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees." *Olympic S.S.*, 117 Wn.2d at 54.

¶20 In recognizing this equitable ground for an insured to recover attorney fees, the *Olympic Steamship* court reasoned:

> Other courts have recognized that disparity of bargaining power between an insurance company and its policyholder makes the insurance contract substantially different from other commercial contracts. *Hayseeds, Inc. v. State Farm Fire & Cas.*, [177 W. Va. 323, ]352 S.E.2d 73, 77 (W. Va. 1986). When

an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." 352 S.E.2d at 79. Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured. *Hayseeds, Inc.*, 352 S.E.2d 73, 77 (W. Va. 1986); *cf. Sec. Mut. Cas. Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878, 884 (1975). Further, allowing an award of attorney fees will encourage the prompt payment of claims. 352 S.E.2d at 79.

*Olympic S.S.*, 117 Wn.2d at 52-53 (footnote omitted).

¶21 Our Supreme Court reaffirmed *Olympic Steamship* in *McGreevy v. Oregon Mutual Insurance Co.*, 128 Wn.2d 26, 904 P.2d 731 (1995). The *McGreevy* court noted, "The principal premise underlying the award of attorney fees in *Olympic Steamship* was that an 'insurance contract [is] substantially different from other commercial contracts.' " *McGreevy*, 128 Wn.2d at 35 (alteration in original) (quoting *Olympic S.S.*, 117 Wn.2d at 52). Those differences included (1) the disparity of bargaining power between an insurance company and its policyholder and (2) the motivation of an individual to seek insurance for " 'protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." ' " *McGreevy*, 128 Wn.2d at 35 (quoting *Olympic S.S.*, 117 Wn.2d at 52 (quoting *Hayseeds, Inc.*, 352 S.E.2d at 79)). The *McGreevy* court reaffirmed the *Olympic Steamship* rule, stating that rule's equitable remedy "follows from the special fiduciary relationship that this court has recognized as existing between an insurer and insured." *McGreevy*, 128 Wn.2d at 36.

¶22 CAU argues that "the circumstances presented in the instant case do not fit into the underlying equitable principles of *Olympic Steamship* and its progeny at all." Br. of Appellant at 25. CAU contends that because CAU insured

the Board, (1) CAU and the Kalleses did not share an unequal bargaining position and (2) CAU did not have a "special fiduciary relationship" with the Kalleses. Br. of Appellant at 25. CAU further argues that the issue does not involve prompt payment of claims.

¶23 The *Olympic Steamship* rule applies where the insurer forces the insured to litigate questions of coverage. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 147, 930 P.2d 288 (1997) (citing *McGreevy*, 128 Wn.2d at 32 n.4). "Coverage questions generally concern who is insured, the type of risk insured against, or whether the insurance contract exists." *Axess Int'l Ltd. v. Intercargo Ins. Co.*, 107 Wn. App. 713, 721, 30 P.3d 1 (2001). Here, the issue is who is insured. CAU's argument that *Olympic Steamship* does not allow the Kalleses to recover attorney fees, assumes that they were not a coinsured party.

¶24 CAU does not dispute that its policy insured the Elkinses, nor does it otherwise argue that the *Olympic Steamship* rationale would not apply if the Elkinses were defending against CAU's subrogation claim. We hold that the Kalleses and the Elkinses are coinsured; therefore, CAU's insurance policy covers the Kalleses and the Elkinses equally. As the Elkinses' coinsured, the Kalleses were insured under the policy for fire damage and, through CAU's lawsuit, were forced to prove the validity of their coinsured status to obtain benefit of the insurance. This is precisely what *Olympic Steamship*'s equitable rule was designed to address. *Olympic S.S.*, 117 Wn.2d at 54.

¶25 Although the promptness of payment rationale in *Olympic Steamship* may not be at issue here—as CAU paid the claim—our Supreme Court has applied the *Olympic Steamship* rule where one insurance carrier paid a claim but then sought to recover part of the claim from another insurance carrier. *Leingang*, 131 Wn.2d at 144-45. In *Leingang*, after paying Leingang's medical bills, the medical insurer asserted a subrogation claim against Leingang's auto insurer for any future settlement or judgment. *Leingang*,

131 Wn.2d at 139. The medical insurer also sought reimbursement from the auto insurer for the medical bills it had paid on behalf of Leingang. *Leingang*, 131 Wn.2d at 139. Our Supreme Court reasoned that the claim involved a coverage dispute and that although the medical insurer paid Leingang's bills, it forced him to litigate the issue of coverage by asserting an interest against the proceeds of his auto insurance. *Leingang*, 131 Wn.2d at 147. Accordingly, the court upheld the trial court's award of attorney fees "for the part of the suit which determined the issue of coverage." *Leingang*, 131 Wn.2d at 148.

¶26 Here, the issue was one of coverage: CAU paid the claim but has always maintained that the Kalleses were not entitled to coverage under the condominium insurance policy. Upon suing the Kalleses to recover the amount it paid, CAU forced the Kalleses to defend coverage that the law provided them as the Elkinses' coinsured.

 ¶27 The trial court did not err in granting attorney fees under *Olympic Steamship*. We affirm the Kalleses' attorney fees award for defending this lawsuit at trial and award attorney fees on appeal. RAP 18.1. A commissioner of this court will determine the amount upon compliance with RAP 18.1.

¶28 Affirmed.

Armstrong and Quinn-Brintnall, JJ., concur.