[No. 29975-9-III.   Division Three.   May 17, 2012.]

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, *as Subrogee, Appellant,* v. CORRINE COOK ET AL., *Respondents.*

*Joseph A. Grube, Karen Orehoski*, and *Scott C. Breneman* (of *Ricci Grube Breneman PLLC*) (*Benjamin F. Gallagher, of counsel*), for appellant.

*Michael L. Wolfe* (of *Randall & Danskin PS*) and *Michael E. McFarland Jr.* and *Heather Yakely*, for respondents.

¶1 SWEENEY, J. — The rule in this state, and the trend nationwide, is that the tenant is a coinsured with her landlord under the landlord's fire insurance policy, absent a specific provision in the rental agreement or lease to the contrary. Here, the tenant's husband apparently accidently started a fire that damaged a multiunit apartment building. The landlord's insurance carrier sued the tenant for damages and claimed the right to equitable subrogation. We conclude that the tenant is a coinsured with the landlord and, therefore, not subject to a subrogation claim. We affirm the summary dismissal of the insurance carrier's claim.

## FACTS

¶2 Corrine Cook rented an apartment in the Regal Ridge Apartments in Spokane, Washington. The building has nine other apartments. Ms. Cook is married to Christopher Cook. They have two children; both live with Ms. Cook. Mr. Cook had recently been released from prison and spent his

nights at a halfway house in Spokane. He was permitted, under the terms of his release, to visit his family in the apartment, and he did so.

¶3 The owner of the building insured it against fire with Trinity Universal Insurance Company of Kansas.

¶4 Mr. Cook visited the apartment on May 13, 2009. Ms. Cook was at work then and their children were at school. Mr. Cook smoked a cigarette out on the apartment's balcony. He discarded the cigarette into a plastic pail, and apparently that ignited a fire. The resulting fire damaged Ms. Cook's apartment, a number of other apartments, the roof, the exterior, and the heating, ventilation, and cooling units. Damage to the apartment Ms. Cook rented was estimated at $49,057. Damage to the complex was in excess of $800,000. Trinity paid to repair the building.

¶5 Trinity then sued Mr. and Ms. Cook and claimed a right to equitable subrogation to recover the amount paid for the loss. Ms. Cook moved for summary dismissal of the suit and argued that she should be considered an additional insured under the policy and therefore Trinity was not entitled to subrogate its loss against her. Mr. Cook joined in his wife's motion and argued that he too should not be subject to subrogation because he was married to Ms. Cook, was in the apartment legally, and therefore was also covered under the policy. The court ultimately granted the Cooks' motion and dismissed Trinity's suit.

## DISCUSSION

### Insurance Company's Right to Equitable Subrogation

¶6 The court appropriately resolved this suit on summary judgment. There are no disputed material issues of fact and the questions before the court are questions of law (Is the tenant a coinsured under the landlord's fire insurance policy? Is Mr. Cook also insulated from the subrogation claim?). We will review those questions de novo. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429, 38 P.3d 322 (2002).

¶7 Trinity contends that Ms. Cook is not insured under the policy, at least for those damaged portions of the building other than her own apartment. It relies on a decision of this court, *Cascade Trailer Court v. Beeson*, 50 Wn. App. 678, 749 P.2d 761 (1988), and argues that the case announced a so-called "reasonable expectations" rule on these questions rather than a categorical rule, a rule that always includes the tenant as an additional insured. *Id.* at 687. And, Trinity continues there was no expectation here that the policy would cover those portions of the building that Ms. Cook and her family did not occupy. It continues that Ms. Cook might reasonably expect that her rent payment would cover a portion of the insurance premium associated with her apartment but certainly not the rest of the building.

¶8 Mr. and Ms. Cook read the holding in *Cascade* differently. Br. of Resp'ts at 5. They argued that the expectation here is that their rent check would cover the landlord's cost to insure the building and render them additional insureds.

¶9 The right to subrogation is grounded in equity rather than strict legal criteria. Indeed, it represents " 'the moralistic basis of tort law as it has developed in our system.' "*Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632 (1998) (quoting Spencer L. Kimball & Don A. Davis, *The Extension of Insurance Law Subrogation*, 60 Mich. L. Rev. 841, 841 (1962)). So the equitable doctrine of subrogation seeks to impose responsibility for a loss on a party who "in equity and good conscience, [should] bear it." *Id.*

¶10 The application of the subrogation doctrine, under the same circumstances presented here, was recently addressed by Division Two of this court in *Community Association Underwriters of America, Inc. v. Kalles*, 164 Wn. App. 30, 259 P.3d 1154 (2011). And, in that decision the court does a number of things that are helpful here.

¶11 First, the court surveyed the various approaches around the country to this issue of subrogation and distilled them down to three different approaches. *Id.* at 34-36. The

first would permit subrogation against the tenant absent a clear contractual prohibition. *Id.* at 35. The court described this as the minority rule. *Id.* The second was described as a case-by-case approach that would focus on the reasonable expectations of the parties "under the facts of the case." *Id.* It is this second approach that Trinity urges us to apply here. Br. of Appellant at 6-9. Division Two finally settled on the third approach, or so-called *Sutton* rule,[1] based on its reading of our opinion in *Cascade Kalles*, 164 Wn. App. at 36. It requires the courts to presume that the tenant is a coinsured with the landlord absent an express agreement to the contrary. *Id.* at 36. Under this rule there is no right to subrogation over and against the negligent tenant. *Id.* And the trend in this country seems to be to this third approach.[2]

¶12 The insurance carrier in *Cascade* apparently argued that provisions in the lease agreement that prohibited the tenant from " 'intentionally or negligently destroy[ing] any part of the premises' " and that required him to " 'vacate said premises in as good order and condition they are now in, excepting the reasonable wear and tear thereof' " effectively resulted in the tenant being liable for fire damage caused by the tenants. *Cascade*, 50 Wn. App. at 679. The court in *Cascade* rejected that reading of the rental agreement and concluded that a tenant could sign this lease and never reasonably contemplate that his landlord's insurer could collect damages from him if he negligently caused a

---

[1] *Sutton v. Jondahl*, 1975 OK Civ App 2, 532 P.2d 478, 482.

[2] *E.g., Alaska Ins. Co. v. RCA Alaska Commc'ns, Inc.*, 623 P.2d 1216, 1218 (Alaska 1981); *DiLullo v. Joseph*, 259 Conn. 847, 792 A.2d 819 (2002); *Lexington Ins. Co. v. Raboin*, 712 A.2d 1011, 1016 (Del. Super. Ct.), *aff'd*, 723 A.2d 397 (Del. 1998); *N. River Ins. Co. v. Snyder*, 2002 ME 146, 804 A.2d 399, 403-04; *Peterson v. Silva*, 428 Mass. 751, 704 N.E.2d 1163, 1164 (1999); *N.H. Ins. Grp. v. Labombard*, 155 Mich. App. 369, 399 N.W.2d 527 (1986); *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87, 89 (Minn. Ct. App. 1993); *Tri-Par Invs., LLC v. Sousa*, 268 Neb. 119, 680 N.W.2d 190, 195 (2004); *Safeco Ins. Co. v. Capri*, 101 Nev. 429, 705 P.2d 659, 661 (1985); *Cambridge Mut. Fire Ins. Co. v. Crete*, 150 N.H. 673, 846 A.2d 521 (2004); *Cmty. Credit Union of New Rockford, N.D. v. Homelvig*, 487 N.W.2d 602, 605 (N.D. 1992); *Dattel Family Ltd. P'ship v. Wintz*, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007); *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1163 (Utah Ct. App. 1994).

fire that destroyed the premises. *Id.* at 687. And, while the court in *Cascade* uses the words "reasonable expectations," it ultimately goes on to adopt "the *Sutton* line of cases and hold Cascade is presumed to carry its insurance for the tenant's benefit because the lease did not contain an express provision to the contrary." *Id.* at 687-88.

¶13  Here, there is no agreement express or implied that Ms. Cook would not be covered by the landlord's insurance policy. The presumption, then, under the *Sutton* line of cases including *Cascade* and *Kalles*, is that she is covered by that policy and is not subject to the insurer's subrogation claim. *Id.* Trinity, then, has no right to seek subrogation from its coinsured Ms. Cook.

¶14  Again, we focus on the equitable considerations. And Trinity's view would make the tenant potentially responsible for maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer in an amount necessary to pay the replacement cost of the entire complex, irrespective of the portion he occupied. This would be the same property interest insured by the landlord under his fire insurance policy. That is a duplication of insurance coverage and an economic waste. *See Peterson v. Silva*, 428 Mass. 751, 754, 704 N.E.2d 1163 (1999) ("It surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy."); *DiLullo v. Joseph*, 259 Conn. 847, 854, 792 A.2d 819 (2002) ("in a multiunit building, the waste would be compounded by the number of tenants").

¶15  We conclude then that Ms. Cook and her landlord were coinsureds.

MR. COOK INSULATED FROM TRINITY'S SUBROGATION CLAIMS

¶16  Trinity also contends that regardless, Mr. Cook was not a tenant and is therefore subject to its subrogation claim.

¶17 The undisputed facts here are that Mr. Cook is married to Ms. Cook. They are a marital community. And there is no suggestion that he was in the apartment with anything other than Ms. Cook's approval.

¶18 A debt incurred by either spouse during marriage is a community debt. *Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 26 Wn. App. 351, 353, 613 P.2d 169 (1980). "The key test is whether, at the time the obligation was entered into, there was a reasonable expectation the community would receive a material benefit from it." *Sunkidd Venture, Inc. v. Snyder-Entel*, 87 Wn. App. 211, 215, 941 P.2d 16 (1997). Actual benefit to the community is not required as long as there was an expectation of community benefit. *Oil Heat*, 26 Wn. App. at 355.

¶19 Ms. Cook signed the lease and it benefited the marital community: "I had made the decision to move from the other side of the mountains to prepare a new—new beginning for my family upon Chris getting out of prison." Clerk's Papers at 120. Mr. Cook visited the apartment every Sunday and Ms. Cook and her daughters visited him at the halfway house three times per week. Again, he used the apartment and he used it with his wife's agreement and expectation that he would use it. He was there, if not at her specific invitation, then, at least without her objection. He was not a guest. He was not in the apartment in violation of the lease. He had a right to be there and, accordingly, was also covered by the same policy of insurance as his wife. The obligations Ms. Cook took on by the lease arrangements were then community obligations. *Id.* at 353.

¶20 We affirm the summary dismissal of Trinity's suit.

BROWN and KULIK, JJ., concur.

Review denied at 175 Wn.2d 1016 (2012).