# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GRETCHEN MICHELS,

Appellant,

v.

FARMERS INSURANCE EXCHANGE,
an insurance company,

Respondent,

BALLARD SIX, a Washington
corporation and condominium
association,

Defendant.

No. 77919-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 8, 2019

APPELWICK, C.J. — Michels owns a unit at the Ballard Six condominium complex, and is a member of the Ballard Six Condominium Association. Michels sued Farmers and Ballard Six for damages from a fire in her unit. The trial court dismissed all claims against Farmers on summary judgment. Michels argues that the trial court erred in concluding she is neither an insured nor a third party beneficiary under the contract. She also argues that she is entitled to bring a CPA[1] claim against Farmers regardless of whether or not she is an insured or a third party beneficiary. We affirm.

---

[1] Consumer Protection Act, chapter 19.86 RCW.

## FACTS

Ballard Six is a condominium owners association in Seattle, organized under the Washington Condominium Act (WCA), chapter 64.34 RCW. Each unit owner at the Ballard Six condominium complex is a Ballard Six member.[2] Gretchen Michels owns a unit at the complex. On May 11, 2015, she suffered a fire and smoke loss in her unit after placing a microwave on an electric stove burner that was turned on. A couple of weeks later, she also suffered a water loss in her unit after a toilet overflowed.

Michels filed a timely claim with her personal insurer, PEMCO Mutual Insurance Company (PEMCO).[3] She also filed a claim with Farmers Insurance Exchange (Farmers), the property insurer for the Ballard Six. The Farmers policy listed Ballard Six, not Michels, as a named insured. At her deposition, Michels testified that she reported the loss to Farmers on behalf of herself, and was not representing Ballard Six.

A Farmers adjuster, Oscar Ortiz, began working on Michels's claimed loss.[4] Ortiz inspected the smoke loss on May 13, and created an estimate of the scope

---

[2] We refer to the Ballard Six condominium association as "Ballard Six," and specify when we instead refer to the Ballard Six condominium complex.

[3] PEMCO eventually paid Michels approximately $28,000.00 for additional living expenses, and approximately $30,000.00 for the removal, cleaning, and replacement of her personal property.

[4] It is unclear from the record when Michels notified Farmers of the water loss, but she testified that she had called Ortiz about the water loss. It is also unclear from the record if Ortiz inspected the unit for water damage based on a separate water loss claim. There does not appear to be an entry in the claim summary report for a separate water loss claim, and the parties do not provide a citation for a separate claim.

and cost of repairs so that Farmers could issue a payment to Ballard Six. The damage he noted included the following:

> In the kitchen the range is fire/smoke damage, the laminate countertop was burned. The [dishwasher] and Refridgerator [sic] are heavily smoke damaged. The cab[inet]s appear to be fine, but will need heavy clean[ing] and paint to seal. . . . Base is not caulked and Servpro [of Woodinvile] stated that Base should be replaced due to the heavy smoke as the [medium-density fibreboard] material would be damaged by smoke. Blinds would need replacement. Exhaust fan above range would need replacement as well as all light fixtures. . . . [A]ll other areas of this . . . unit [are] heavily smoke damaged. . . . Servpro said would [sic] need to scrape and retexture [the acoustic ceiling] due to amount of soot damaged [sic]. . . . Tub in hall bathroom should be able to be cleaned. Toilet in hall bath will need replacement due to heavy soot damage, but in master bath, toilet can be cleaned. Doors will need replacement as [they are] hollow core and appear would [sic] be smoke damaged Servpro stated. Wall heaters/[baseboard heaters] in unit will need replacement due to heavy smoke damage. Vanities . . . are ok and can be cleaned.

That day, Ortiz gave Michels an initial $19,567.00 check made out to Ballard Six. In September 2015, he reinspected the unit, and gave Michels another check made out to Ballard Six for $9,503.23.

At his deposition, Ortiz testified that, during the initial inspection, he asked Michels whether she was authorized to move forward with the claim. He stated that Michels told him she was authorized, and that she was the treasurer of the Ballard Six.[5] But, after contacting Bill Fraher, Ballard Six's president, Ortiz learned that Michels was no longer the treasurer and that Fraher was the authorized representative for purposes of the claim. In October 2015, Ortiz began working with Fraher to move forward with the claim.

---

[5] Michels disputes that she ever told Ortiz that she was the authorized representative of Ballard Six.

3

Fraher understood that Ballard Six could choose the repair contractor, and was provided with a list of three contractors Ortiz had worked with before. Two of those contractors were McBride Construction (McBride) and Charter Construction (Charter). Fraher called all three contractors, but heard back from only McBride. At a November 4, 2015 meeting of the Ballard Six Board of Directors, Fraher asked that any members who wanted to suggest a contractor give him that contractor's name by an agreed deadline. As of the deadline, no members, including Michels, had suggested a contractor. At the next meeting, the Ballard Six Board of Directors voted to hire McBride as the repair contractor for Michels's unit.

John Niederegger, an estimator for McBride, visited the Ballard Six condominium complex a few times in 2015, but never wrote a repair estimate. Shortly after, he recommended that Ballard Six and Farmers hire a mitigation company to complete mitigation and demolition of the unit, so that McBride could revisit the unit and provide an accurate repair estimate. At his deposition, Ortiz testified that McBride never issued an estimate because it was going to work off of his estimate. And, at Fraher's deposition, he testified that he understood that McBride agreed to do the repairs for $41,180.70, the amount of Ortiz's estimate.

Michels never saw an estimate from McBride. Concerned about hiring a contractor without an estimate, she tried to get PEMCO to cover her unit. PEMCO refused, because the policies said that Farmers was the primary insurer. Around that time, Fraher was denied entry to Michels's unit.

Michels eventually obtained an estimate from Charter.[6] The estimate was three times more than the amount Farmers offered to pay to repair her home. It included repairs to walls, wall heaters, windows, doors, cabinets, the ceiling, the flooring, and the water heater. In September 2016, Michels's attorney forwarded the Charter estimate to Farmers, which Farmers sent to Fraher. Ortiz also asked Fraher for an update on the status of repairs. Ortiz never received a response from Ballard Six about the Charter estimate.

Michels filed suit against Farmers in November 2016.[7] On March 24, 2017, she filed a second amended complaint for money damages against Farmers and Ballard Six. Her claims against Farmers included breach of contract, insurance bad faith, violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, negligent claims handling, and violation of the Insurance Fair Conduct Act (IFCA), chapter 48.30 RCW. She also sought declaratory judgments against Farmers regarding its coverage.

---

[6] Michels also obtained a work plan for her unit from Susan Evans, an industrial hygienist. Evans concluded, on a more probable than not basis, that smoke affected all surfaces within the unit, there were metals in the dust on many surfaces, mold growth was present on numerous surfaces, and the sheet flooring in the laundry contained asbestos. Evans's work plan required the removal and destruction of several "contaminated materials" in the unit, including the gypsum wallboard, vinyl window frames, kitchen cabinets and countertops, certain appliances, water-damaged laminate flooring, interior doors, and electric wall heaters. In her brief, Michels does not argue that she provided Evans's work plan to Farmers.

[7] Michels filed her first complaint on November 14, 2016, and an amended complaint on December 8, 2016.

Specifically, Michels alleged that Farmers failed to conduct a site visit for more than 100 days after the water loss, failed to conduct a reasonable investigation of the loss, and failed to provide her with a full scope of the repairs in the year after the loss. She also alleged that Farmers deprived her of her right to select a contractor to perform the repairs.

On November 13, 2017, Farmers filed a motion for summary judgment, arguing that Michels's claims should be dismissed because she is not an insured, nor a party to the insurance contract. As a result, it argued that she has no standing to assert any of her claims. The trial court granted Farmers's motion. It concluded that Michels is not a named insured and presented no fact indicating that she is an intended third party beneficiary to the contract. Michels appeals.[8]

DISCUSSION

Michels makes three arguments. First, she argues that she is an insured and first party claimant under the Farmers policy. Second, she argues that she is a third party beneficiary to the Farmers policy. Third, she argues that even if she is not an insured or a third party beneficiary, standing to bring a CPA claim does not require an insurer-insured or contractual relationship.

---

[8] In its brief, Farmers notes that Michels settled her claims with the Ballard Six in advance of trial, but does not provide a citation to any settlement information in the record. In her complaint, Michels alleged that Ballard Six violated its declaration and bylaws, and had an obligation to participate in the adjustment of the insurance claim and ensure that Michels's residence was fully restored in prompt fashion. She sought damages, declaratory relief, and an injunction requiring Ballard Six to sue Farmers and authorizing her to pursue an action against Farmers. There does not appear to be any information regarding a settlement between Michels and Ballard Six in the record. And, Michels does not address the settlement in her briefing. As a result, we do not know whether Michels in fact settled her claims, or what the details of that settlement were.

6

I. Standard of Review

This court reviews summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Id. If a plaintiff, "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), overruled on other grounds by 130 Wn.2d 160, 922 P.3d 69 (1996).

II. Insurance

Interpretation of an insurance contract is a question of law that this court reviews de novo. Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Courts "construe insurance policies as contracts." Id. In doing so, courts construe the policy as a whole, giving it a fair, reasonable, and sensible construction, as would be given by the average person purchasing insurance. Weyerhauser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66, 15 P.3d 115 (2000). If the policy language is clear and unambiguous, a court must enforce it as written. Quadrant, 154 Wn.2d at 171. Courts may not modify a policy, or create ambiguity where none exists. Id.

## A. Farmers Policy

The WCA requires that condominium associations maintain, to the extent reasonably available, property insurance on the condominium and liability insurance. RCW 64.34.352(1)(a)-(b). The property insurance "may, but need not, include equipment, improvements, and betterments in a unit installed by the declarant or the unit owners, insuring against all risks of direct physical loss commonly insured against." RCW 64.34.352(1)(a).

Insurance policies under RCW 64.34.352(1) must provide that "[e]ach unit owner is an insured person under the policy with respect to liability arising out of the owner's interest in the common elements or membership in the association." RCW 64.34.352(3)(a). But, condominium associations are not required to maintain insurance for a unit owner's own benefit. Instead, a unit owner is allowed to obtain insurance for their own benefit. RCW 64.34.352(5).

The Farmers policy at issue here lists Ballard Six as the only named insured. In the policy's "Condominium Liability Coverage Form," a section titled "Who Is An Insured" lists the following with regard to unit owners:

4. The developer in the developer's capacity as a unit-owner, but only with respect to the developer's liability arising out of:

   a. The ownership, maintenance or repair of that portion of the premises which is not owned solely by the developer; or
   b. The developer's membership in the Association.

   However, the insurance afforded with respect to the developer does not apply to liability for acts or omissions as a developer.

5. Each other unit-owner of the described condominium, but only with respect to that person's liability arising out of the ownership, maintenance or repair of that portion of the premises which is not

8

owned solely by the unit-owner or out of that person's membership in the Association.

The policy's "Condominium Property Coverage Form" does not include a section describing who is insured. Under that form, covered property includes the "[b]uilding and structure described in the Declarations." An endorsement later modified the policy, adding the following to the policy's covered property:

(6) Any of the following types of property within a residential unit:

(a) Fixtures, improvements and alterations that are a part of the building or structure; and
(b) Permanently installed appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering security or housekeeping.

The property coverage form mentions unit owners only with respect to their personal property being excluded. The policy states, "Buildings does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph A.1.a.(4) above." (Boldface omitted.) In that paragraph, personal property includes property owned by Ballard Six "that is used to maintain or service the building or structure."

B. Insured

Michels argues that she is an insured under the Farmers policy because she is the "only real party in interest as to property she exclusively owns." (Boldface omitted.) She relies on Merriman v. American Guarantee and Liability Insurance Co., 198 Wn. App. 594, 396 P.3d 351, review denied, 189 Wn.2d 1038, 413 P.3d 565 (2017), Community Association Underwriters of America, Inc. v. Kalles, 164 Wn. App. 30, 259 P.3d 1154 (2011), and Robbins v. Milwaukee

Mechanics Insurance Co., 102 Wash. 539, 173 P. 634 (1918). She also argues that Farmers considered her an insured.

In Merriman, a fire destroyed a storage warehouse owned by Bernd, including the personal property of its customers. 198 Wn. App. at 601. After the customers sued Bernd, its insurer, and the insurance adjuster, the trial court granted the insurance adjuster's motion for summary judgment dismissal of the customers' claims. Id. at 603-04. The Merrimans appealed, and this court considered first whether the Merrimans' claim under the property provisions of the policy was a first party claim by an insured. Id. at 604.

This court noted that the section in the policy describing covered property included "'[p]ersonal property of others in [Bernd's] care, custody and control." Id. at 607. The section also stated, "our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.'" Id. The court determined that this language clearly and unambiguously included as covered property the Merrimans' personal property. Id. And, it found that the statement "our payment for loss of or damage to personal property of others will only be for the account of the owner of the property" unambiguously contemplated that the insurer would pay the loss directly to the owner of that property. Id. Thus, it concluded that the policy was "most reasonably read to include all owners of covered property as insureds, thereby making the Merrimans and other storage customers first party claimants." Id. at 610.

10

Merriman does not control. Here, the section in the policy describing covered property refers to unit owners, but only to exclude their personal property from coverage. The one exception to the exclusion of personal property coverage is personal property owned by Ballard Six that is "used to maintain or service the building or its structure or its premises." Michels made a separate claim with her personal insurer, PEMCO, for her personal property losses. Unlike Merriman, there is no provision that Farmers will pay unit owners directly for the loss of their property. There is a provision that Farmers's payment "for loss of or damage to personal property of others will only be for the account of the owners of the property." But, again, the policy excludes coverage of unit owners' personal property.

Michels's claims against Farmers are based on the Charter estimate, which includes repair estimates for structural damage to her unit, including damage to walls, wall heaters, windows, doors, cabinets, the ceiling, the flooring, and the water heater. The Farmers policy covers some property within a residential unit, including "[f]ixtures, improvements and alterations that are a part of the building or structure" and certain "permanently installed appliances." But, Ballard Six is the named insured for those covered items.

Next, in Kalles, a condominium board had a fire insurance policy that listed the named insured as "'Harbour Commons, A Condominium.'" 164 Wn. App. at 33. The condominium declaration requiring the board to maintain fire insurance stated that the board was "'named as insured as trustee for the benefit of owners

and mortgagees as their interest may appear.'" Id. at 32. After a fire damaged a unit leased by the Kalleses from the Elkinses, the fire insurer sued the Kalleses, as subrogee of the Harbour Commons, for negligently causing the fire. Id. at 32-33. The Kalleses successfully moved for summary judgment, arguing that the insurer could not sue them because they were a coinsured under the policy. Id. at 33.

This court determined that "the law presumes a tenant to be the landlord's coinsured absent an express agreement to the contrary." Id. at 36. The insurer argued in part that this rule did not apply because the landlords, the Elkinses, were not insured under the policy, only the board was. Id. at 37. This court did not agree. See id. Although Harbour Commons was the named insured, it pointed out that the condominium declaration required the board to obtain fire insurance "'as trustee for the benefit of the owners.'" Id. Even though the insurer did not bargain directly with the Elkinses to insure them, it bargained with "their trustee, the Board, to insure the Harbour Commons." Id. This court found that "[t]here can be no question that the insurance policy served to benefit the Elkinses." Id. Accordingly, because the Kalleses were in privity of contract with the Elkinses and shared a property interest in the unit, they had reason to expect that the policy would cover them as well. Id.

Kalles is distinguishable for two reasons. First, the main issue involved whether the tenants under a lease could avoid an insurer's subrogation claim, based on the argument that they were a coinsured under the policy. See id. at 33.

12

Here, there is no landlord-tenant relationship nor subrogation claim. Second, the condominium declaration for the Harbour Commons required that the board obtain fire insurance "'as trustee for the benefit of owners.'" Id. at 32. Michels does not point to similar language in the Ballard Six's condominium declaration. Rather, its declaration provides that "[a]n insurance policy issued to the Association does not prevent a Unit Owner from obtaining insurance for the Owner's own benefit." And, it requires the policy to provide that unit owners are insured "with respect to liability arising out of the Owner's interest in the Common Elements or membership in the Association." It does not require the policy to provide that unit owners are also insured with respect to property coverage.

Last, in Robbins, Robbins sold two pool tables to Kempf. 102 Wash. at 540. Under a conditional sale agreement, she reserved title in the pool tables until Kempf completed a certain number of installment payments, totaling $300.00. Id. After making only a few small payments, Kempf made a bill of sale of the property, including the pool tables, in his place of business to his father. Id. Kempf, as his father's agent, then obtained a fire insurance policy that covered the property in the bill of sale. Id. Shortly after, all of the insured property was destroyed in a fire. Id. at 540-41. Robbins sought to enjoin the insurance company from paying money for the pool tables to Kempf, and asked that she be paid her interest in the pool tables. Id. at 541. The trial court entered a judgment in favor of Robbins. Id. at 541-42.

The State Supreme Court affirmed, noting that legal title to the pool tables at all times remained in Robbins. Id. at 542, 545. It also noted that the trial court found that Kempf, in procuring the insurance, disclosed that he had not paid for the pool tables. Id. at 543. Despite the insurance company's argument that there was no contractual relationship between it and Robbins, the court determined that the company "received its premium, the property was destroyed, and it ought not, in good conscience, to avoid paying the loss on a mere technicality." Id. at 544.

The facts here differ from those in Robbins. Ballard Six did not obtain an insurance policy on personal property it was in the process of purchasing from Michels. Rather, it obtained property coverage on a condominium complex where Michels owns a unit. The policy covers some property within the units, including "[f]ixtures, improvements and alterations that are a part of the building or structure" and "[p]ermanently installed appliances." But, the condominium declaration provides that "[a]ny loss covered by the property insurance . . . must be adjusted with the Association." The insurance proceeds for that loss "are payable to any insurance trustee designated for that purpose, or otherwise to the Association, and not to any holder of a Mortgage." The parties do not point to any language in the declaration indicating that a unit owner is an "insurance trustee." And, the Farmers policy expressly excludes coverage for personal property of the unit owner.

Michels also argues that Farmers considered her to be an insured. She points out that Farmers adjusted the claim exclusively with her for five months after the loss. But, Ortiz testified that Michels told him she was authorized to move

forward with the claim. After Fraher told him that he was the authorized representative, Ortiz worked with Fraher to adjust the claim. And, Michels does not provide authority to support that, despite the policy language, Farmers working with her on the claim means that she was an insured.

Ballard Six is the only named insured in the Farmers policy. The policy includes both property and liability coverage. The liability coverage form lists unit owners as insureds, but only with respect to their liability arising out of the ownership, maintenance, or repair of "the premises which is not owned solely by the unit-owner or out of that person's membership in the Association." The property coverage form does not similarly provide that unit owners are insured. It excludes unit owners' personal property and covers some property within a unit. That property includes "fixtures, improvements and alterations that are a part of the building or structure" and certain "permanently installed appliances." But, there is no provision that Farmers will pay unit owners directly for those losses.

These facts are not disputed, and Michels does not argue that any language in the policy is ambiguous. Therefore, under the policy's plain language, Michels is not an insured as to property coverage. The trial court did not err in concluding the same.

C. Third Party Beneficiary

Michels argues next that she is a third party beneficiary to the Farmers policy, because the policy "provides direct coverage for the risk of loss not only to common element property owned by the Association, but also to property owned

exclusively by the unit owners." She cites several statutes in the WCA. She also argues that "when a policy covers property owned by one person but is in the name of another, the property owner is a third party beneficiary." (Boldface omitted.) She relies on an Oklahoma case, Hensley v. State Farm Fire and Casualty Co., 2017 OK 57, 398 P.3d 11.

To create a third party beneficiary contract, the parties must intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract. Postlewait Constr., Inc. v. Great Am. Ins. Cos., 106 Wn.2d 96, 99, 720 P.2d 805 (1986). "[T]he test of intent is an objective one." Id. Rather than looking at whether the parties "had an altruistic motive or desire to benefit the third party," the key is whether performance under the contract would necessarily and directly benefit that party. Id. "The contracting parties' intent is determined by construing the terms of the contract as a whole, in light of the circumstances under which it is made." Id. at 99-100.

Michels first points to a provision in the "Loss Payment" section of the policy, which states,

> Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners [sic] property. We will not pay the owners more than their financial interest in the Covered Property.

This section refers to payment for loss of or damage to "personal property of others." As established above, the policy's property coverage does not include the personal property of unit owners, except for personal property owned by

Ballard Six. The policy distinguishes between unit owners' personal property, which is not covered, and certain property within a residential unit that is covered. That property includes fixtures, improvements, and alterations that are a part of the building or structure, and certain permanently installed appliances. For those items, Ballard Six is the named insured. There is no similar provision stating that Farmers will pay unit owners directly for the loss of that property.

Michels quotes several statutes within the WCA. First, under RCW 64.34.354, a condominium association must "notify each insurance company that has issued an insurance policy to the association for the benefit of the owners under RCW 64.34.352 of the name and address of the new owner and request that the new owner be made a named insured under such policy." But, there is no requirement within RCW 64.34.352 that an insurance policy be issued for the benefit of the owners with respect to property coverage. In fact, RCW 64.34.352(5) provides that "[a]n insurance policy issued to the association does not prevent a unit owner from obtaining insurance for the owner's own benefit."

Next, RCW 64.34.352(4) provides that a condominium association "shall hold any insurance proceeds in trust for unit owners and lienholders as their interests may appear." But, Ballard Six did not insure the personal property of individual unit owners, only the common property interests. Michels does not establish that Ballard Six is holding insurance proceeds in trust for her related to her personal property losses. On these facts, this section of the statute does

17

nothing to demonstrate she was an intended third party beneficiary of the Ballard Six insurance contract.[9]

Last, Michels relies on <u>Hensley</u> for the proposition that "[w]hen a policy covers property owned by one person but in the name of another, the property owner is a third party beneficiary." (Boldface omitted.) But, this is not what the <u>Hensley</u> court held. <u>See</u> 398 P.3d at 25.

In <u>Hensley</u>, Douglas bought a mobile home using a contract for deed from the Hensleys, who had an insurance policy on the home. <u>Id.</u> at 14. The Hensleys continued making premium payments on the policy, which continued to be renewed. <u>Id.</u> Under the contract for deed, Douglas made monthly payments to the Hensleys that were required to include the insurance premium amounts. <u>Id.</u> Douglas was not expressly named in the policy. <u>Id.</u> After reporting a theft and vandalism of the home, Douglas and the Hensleys sued the insurer. <u>Id.</u> at 15. The insurer filed a summary judgment motion, arguing that Douglas was a stranger to the insurance contract and unable to bring his claim. <u>Id.</u> at 15-16. The trial court granted the insurer's motion. <u>Id.</u> at 16.

On appeal, Douglas argued that that he was a third party beneficiary to the contract. <u>Id.</u> at 22. He relied on the insurer treating him and his wife as insureds, his equitable interest in the property, and the insurance covering the risk of harm to the entire property, not just the Hensleys' insurable interest. <u>Id.</u> at 22-23. The

---

[9] Michels also quotes language from RCW 64.32.220. But, the provisions of chapter 64.32 RCW do not apply to condominiums created after July 1, 1990. RCW 64.34.010(2). Ballard Six was formed in 2008. Thus, RCW 64.32.220 does not apply here.

Supreme Court of Oklahoma held that Douglas's equitable title to the property was "insufficient by itself to confer upon him the status of insured." Id. at 25. But, it found that there was a dispute of material fact as to whether the insurer construed the policy to include Douglas as an insured or beneficiary. Id. Douglas presented facts showing that he was considered an insured and that the policy covered the entire value of the property, not just the Hensleys' interest. Id. On the other hand, the insurer presented facts indicating that it distinguished between Hensley as the insured and Douglas as a tenant. Id. The court reversed and remanded the case. Id.

Michels may benefit from Farmers's performance under the policy. But, she does not point to language within the policy that suggests Farmers and Ballard Six intended that Farmers assume a direct obligation to her. Rather, Ballard Six is the only named insured. The policy's liability coverage form provides that unit owners are insured as to their liability "arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner or out of that person's membership in the Association." The policy's property coverage form does not include a similar provision. While it covers certain property within residential units that is a part of the building or structure, it does not provide that Farmers will pay unit owners directly for those losses.

These facts are not disputed. Accordingly, the trial court did not err in concluding that Michels is not a third party beneficiary to the Farmers policy.

D. CPA Claim

Michels argues last that, even if she is not an "insured, first-party claimant, or third-party beneficiary, CPA standing does not required an insured/insurer or contractual relationship." She relies on Panag v. Farmers Insurance Company of Washington, 166 Wn.2d 27, 204 P.3d 885 (2009), and University of Washington v. Government Employees Insurance Company, 200 Wn. App. 455, 404 P.3d 559 (2017).

In Panag, the State Supreme Court considered whether the CPA applies to a collection agency's "allegedly deceptive efforts to collect on an insurance company's subrogation claim against an uninsured motorist." 166 Wn.2d at 34. The collection agency and its client insurance companies argued that the CPA "applies only to disputes arising from a consumer or business transaction, not an alleged tort." Id. The court disagreed, and found that, under RCW 19.86.090 "[t]he CPA allows '[a]ny person who is injured in his or her business or property by a violation' of the act to bring a CPA claim." Id. at 39 (second alteration in original) (quoting RCW 19.86.090). It determined that nothing in that language "requires that the plaintiff must be a consumer or in a business relationship." Id.

But, in a footnote, the court distinguished Panag from a CPA claim based on an insurer's violation of its statutory duty of good faith. Id. at 43 n.6. While it noted that contractual privity is not usually required to bring a CPA claim, it stated that only an insured may bring a CPA claim for an insurer's breach of its statutory duty. Id.

Similarly, in University of Washington, the insurer argued that the trial court erred in allowing the University to bring a CPA claim against it, because the University was not one of its insureds. 200 Wn. App. at 469. The University's claim was based on the insurer's repudiation of a private agreement to split liability between the two. Id. at 464. This court noted that "a '[CPA] claim against an insurance company for breach of its duty to exercise good faith under RCW 48.01.030 is limited to the insured.'" Id. at 470 (alteration in original) (quoting Green v. Holm, 28 Wn. App. 135, 137, 622 P.2d 869 (1981)). But, the court concluded that the insurer's argument did not apply to a private CPA claim, which the University had brought. Id. The trial court had not allowed the University to bring a "per se CPA action for breach of insurance claims handling regulations," and the University "did not proceed on a bad faith theory under the CPA." Id. at 471. Thus, the court found that the University was a proper party to bring the claim. Id.

Unlike Panag and University of Washington, Michels's CPA claim was based on Farmers's alleged breach of insurance claims handling regulations. In her complaint, she alleged that Farmers engaged in "unfair or deceptive acts or practices." She based her CPA claim on Farmers's "violation of the provisions of the Unfair Claims Settlement Practices Regulation," located at WAC 284-30-300 through 284-30-450. The regulation derives its statutory authority from RCW 48.30.010, which prohibits insurers from engaging in unfair trade practices and authorizes the insurance commissioner to define methods of competition and acts

21

and practices in the insurance business that are unfair or deceptive. WAC 284-30-300.

Accordingly, because Michels is neither an insured nor a third party beneficiary to the Farmers policy, the trial court did not err in dismissing her CPA claim.

We affirm.

WE CONCUR:

22