■ PREFERRED MUTUAL INSURANCE COMPANY, Respondent-Appellant, v RUTH PINE, Appellant-Respondent, et al., Defendant. [848 NYS2d 190]—

In an action to recover damages for injury to property, the defendant Ruth Pine appeals from a judgment of the Supreme Court, Orange County (Horowitz, J.), dated June 27, 2006, which, upon a jury verdict on the issue of liability, upon stipulation of the parties as to the amount of damages, and upon an order of the same court dated March 28, 2006, denying that branch of her motion which was, in effect, pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law, is in favor of the plaintiff and against her awarding damages, and the plaintiff cross-appeals from the same judgment.

Ordered that the cross appeal by the plaintiff is dismissed; and it is further,

Ordered that the judgment is reversed, on the law, the order dated March 28, 2006 is vacated, that branch of the motion of the defendant Ruth Pine which was, in effect, pursuant to CPLR

4404 (a) to set aside the verdict and for judgment as a matter of law is granted, and the complaint is dismissed insofar as asserted against the defendant Ruth Pine; and it is further,

Ordered that the appellant-respondent is awarded one bill of costs.

The plaintiff's cross appeal from the judgment must be dismissed on the ground that it is not aggrieved by the judgment (see CPLR 5511). The issues raised on the cross appeal have been considered in support of its contention that the judgment appealed from should be affirmed (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539 [1983]).

At issue here is whether the defendant Ruth Pine is liable for the acts of her boyfriend, co-tenant Kenneth Barrish, pursuant to the terms of a one-year form lease originally entered into in 2001. The lease was renewed for a second year in 2002, pursuant to the same terms, and was signed by both Pine and Barrish as co-tenants.

During the term of the second lease, Pine vacated the premises. About one month later, on December 26, 2002, Barrish started a fire which caused significant damage to the premises, resulting in its demolition. As a result of the fire, Barrish pleaded guilty to arson in the fourth degree, a class E felony (see Penal Law § 150.05 [1]).

The instant action was brought by the plaintiff insurance carrier, as subrogee of the owners of the property, to recover the amount paid on the owners' insurance claim against it. In its complaint against both Pine and Barrish, the plaintiff asserted three causes of action. The plaintiff's first cause of action alleged that the fire was the result of Pine's and/or Barrish's negligence. The second cause of action alleged that Pine was vicariously liable for Barrish's negligence pursuant to the terms of the lease, which provided, in pertinent part: "Tenant must pay for damages suffered and money spent by Landlord relating to any claims arising from any act or neglect of Tenant. Tenant is responsible for all acts of Tenant's family, employees, guests and invitees." The third cause of action against Pine asserted that Pine was negligent for failing to warn the owners of Barrish's alleged propensity to set fires.

Barrish defaulted in appearing in the action. Pine answered and moved for summary judgment dismissing the complaint insofar as asserted against her, asserting that the fire was not the result of her negligence and she had no duty to warn the owners of Barrish's allegedly unstable mental condition. The Supreme Court granted that branch of her motion for summary judgment which was to dismiss the third cause of action insofar

as asserted against her, which sounded in breach of a duty to advise the owners of Barrish's mental condition. The court held that Pine was not qualified to evaluate Barrish's mental condition. There is no basis in this record to disturb that determination (*see Gill v New York City Hous. Auth.*, 130 AD2d 256 [1987]; *see also Diakakis v Bedrick*, 236 AD2d 274 [1997]).

At trial, the court found that the plaintiff's claim against Pine sounded in breach of contract and not negligence. At the charge conference, Pine argued that pursuant to the lease, Barrish was her co-tenant and not her family, guest, or invitee. The plaintiff's position was that Pine and Barrish were co-tenants and constituted a nontraditional family.

The trial court instructed the jury that the lease provided that Pine could be held liable as a tenant "for all acts of tenant's family, employees, guests and invitees." Without objection, the trial court charged that Barrish was Pine's co-tenant. Over Pine's objection, the trial court instructed the jury that "[u]nder a lease, non-traditional relationships can be considered as a family" and submitted the question of whether Pine and Barrish were a family to the jury as a question of fact.

On the verdict sheet, the jury was asked a single question: "Is the defendant Ruth Pine liable for the damages caused to the property?" The jury answered "Yes" to this question and judgment was entered against Pine in the principal sum of $100,000 pursuant to a stipulation between the parties to limit damages to $100,000. This appeal and cross appeal ensued.

In New York, the general rule is that an insurance carrier in a subrogation action may recover damages in tort for the tortious conduct of the lessee (*see Phoenix Ins. Co. v Stamell*, 21 AD3d 118, 125 [2005]; *Galante v Hathaway Bakeries*, 6 AD2d 142 [1958]; *see also Federal Ins. Co. v Arthur Andersen & Co.*, 75 NY2d 366 [1990]; *cf. New York Bd. of Fire Underwriters v Trans Urban Constr. Co.*, 60 NY2d 912, 915 [1983]; *USAA Cas. Ins. Co. v Brown*, 206 AD2d 470 [1994]). However, as noted by the plaintiff on this appeal, in the instant case the plaintiff's claim against Pine is "on a contract track" based upon the lease and not upon a tort theory of liability.

In the absence of fault or a specific contract provision to the contrary, neither the landlord nor the tenant is obligated to perform repairs after a fire (*see* Real Property Law § 227; *Smith v Kerr*, 108 NY 31 [1888]; *Kinkaide v Liebowitz*, 20 AD2d 812 [1964]). The instant lease provided that in the event of a fire, the landlord had the option of repairing the premises or canceling the lease. The lease did not impose an obligation to repair the premises upon a tenant (*see Siebel v McGrady*, 170 AD2d

906 [1991]). Further, Pine was not at fault in starting the fire and therefore could not be held liable under the "Repairs, alterations" provision which required the tenant to return the premises in good order and repair (*see Kinkaide v Liebowitz*, 20 AD2d 812 [1964]; *Ducker v Del Genovese*, 93 App Div 575 [1904]), nor could Pine be held liable for negligence or "waste" as argued by the plaintiff.

The plaintiff's position at the trial was that Pine was obligated to indemnify the landlord for Barrish's tortious conduct pursuant to the indemnification provision of the lease which stated that "Tenant is responsible for all acts of Tenant's family, employees, guests and invitees" (*see Bender v Niebel*, 11 Misc 3d 136 [A], 2006 NY Slip Op 50502 [2006]). The "provisions included in a lease that create or enhance a tenant's liability are subject to the normal rules of contract law" (*Rausch v Allstate Ins. Co.*, 388 Md 690, 715, 882 A2d 801, 815 [2005]). To the extent that such provisions may be ambiguous, they are to be construed against the party who prepared it, in this case the landlords who purchased the form lease and provided it to the tenants (*see Rausch v Allstate Ins. Co.*, 388 Md 690, 882 A2d 801 [2005]; *Mazzola v County of Suffolk*, 143 AD2d 734 [1988]). A contract imposing a duty to indemnify must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed (*see Great N. Ins. Co. v Interior Constr. Corp.*, 7 NY3d 412, 417 [2006]; *Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491 [1989]).

Pursuant to the indemnification provision in the lease, a tenant could be held liable for his or her own negligence or wrongdoing (*see Granger Univ. Ave. Corp. v First State Ins. Co.*, 99 AD2d 1022 [1984]; *Galante v Hathaway Bakeries*, 6 AD2d 142 [1958]), or the negligence or wrongdoing of the tenant's family, employees, guests, or invitees (*see Sonny Boy Realty, Inc. v City of New York*, 4 NY3d 858 [2005]). No provision was made in the lease for vicarious liability for the negligence or wrongdoing of a co-tenant or "occupant" (*see Churchill Forge, Inc. v Brown*, 61 SW3d 368 [Tex 2001]; *Granger Univ. Ave. Corp. v First State Ins. Co.*, 99 AD2d 1022 [1984]).

As a co-tenant, Barrish had the legal right to be present on the premises without Pine's consent and was not her guest or invitee (*see Rosenthal v Mahler*, 141 AD2d 625 [1988]). Under the general verdict reached by the jury, the jury could have concluded that Pine was liable pursuant to theories not properly in the case, such as findings that Barrish was her guest or invitee.

The plaintiff's claim that Pine was liable for Barrish's conduct

was founded on its contention that Barrish was part of Pine's family, pursuant to the concept of nontraditional family set forth in *Braschi v Stahl Assoc. Co.* (74 NY2d 201 [1989]), and its progeny, characterized by people living together and holding themselves out as family. *Braschi* interpreted a regulation prohibiting a landlord of a rent-controlled building from evicting a "member of the deceased tenant's family" to include relationships which are not by blood or marriage. At the time the case was decided, there were no regulations defining family pursuant to the rent-control regulations. Since family was not defined, the Court sought to arrive at a definition that satisfied the ultimate purpose of rent control law in stabilizing living arrangements (*see Raum v Restaurant Assoc.*, 252 AD2d 369, 371 [1998]).

The expansive definition of family set forth in *Braschi* was thereafter applied to the rent-stabilized tenants since the purpose of the Rent Stabilization Law was substantially the same as rent control laws (*see East 10th St. Assoc. v Estate of Goldstein*, 154 AD2d 142, 145 [1990]). It has no bearing on interpreting different statutes with different statutory purposes (*see Raum v Restaurant Assoc.*, 252 AD2d at 371). In this case, which does not involve the interpretation of a statute at all, but rather a contractual provision, there is no basis for applying the expansive definition of family set forth in *Braschi*.

In any event, the evidence adduced at the trial did not satisfy the definition of a nontraditional family set forth in *Braschi* and its progeny, i.e., individuals involved in a long-term relationship characterized by both emotional and financial commitment and interdependence (*see RHM Estates v Hampshire*, 18 AD3d 326 [2005]; *Matter of Watson v Perine*, 288 AD2d 7 [2001]; *GSL Enters. v Lopez*, 239 AD2d 122 [1997]; *Seminole Realty Co. v Greenbaum*, 209 AD2d 345 [1994]). Accordingly, the judgment appealed from must be reversed, that branch of Pine's motion which was, in effect, pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law must be granted, and the complaint must be dismissed insofar as asserted against Pine.

In view of the foregoing, Pine's remaining contentions regarding her summary judgment motion have been rendered academic. Rivera, J.P., Goldstein, Skelos and Balkin, JJ., concur.