418 W. 130 St. LLC v Espinal (2024 NY Slip Op 50540(U))

[*1]

418 W. 130 St. LLC v Espinal

2024 NY Slip Op 50540(U)

Decided on May 8, 2024

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 8, 2024
Civil Court of the City of New York, New York County

418 West 130 Street LLC, Petitioner,

against
Junior Espinal and ANTHONY LAZARO, Respondents.

Index No. 74194/2018

For Petitioner: Todd Rothenberg
For Respondent Espinal: Ari Mor
For Respondent Lazaro: Anthony Lazaro, pro se

Jack Stoller, J.

418 West 130 Street LLC, the petitioner in this proceeding ("Petitioner"), commenced this holdover proceeding against Junior Espinal ("Respondent") a respondent in this proceeding, a respondent in this proceeding, and Anthony Lazaro ("Co-Respondent") another respondent in this proceeding (collectively, "Respondents"), seeking possession of 418 West 130th Street, Apt. 52, New York, New York ("the subject premises") on an allegation of termination of a license given by Celso Lazaro ("the Prior Tenant") and Elizabeth Wagner ("the Prior Co-Tenant") (collectively, "the Prior Tenants"). Respondents interposed an answer with defenses of, inter alia, succession. The Court held a trial of this matter.
The trial record
Petitioner proved that it is the proper party to commence this proceeding; that Petitioner had a landlord/tenant relationship with the Prior Tenants; that the Prior Tenants are no longer in possession of the subject premises; that Respondents remain in possession after the vacatur of the Prior Tenants; and that Petitioner cause a predicate notice to be served on Respondents.
Petitioner submitted into evidence a series of leases. Both the Prior Tenants and Petitioner are listed as parties to the leases, although the only signatory for the tenants on all leases commencing on or after April of 2009 is the Prior Co-Tenant, not the Prior Tenant. The most recent of these leases is a two-year lease commencing on April 1, 2017 between Petitioner and the named Prior Tenants, but only signed by the Prior Co-Tenant.
At Petitioner's request, the Court took judicial notice there was a prior holdover proceeding that Petitioner commenced against the Prior Tenant with the index number L/T 66552/2018 ("the Prior Holdover Proceeding") filed on July 9, 2018. The Court appointed a guardian ad litem for the Prior Tenant in the Prior Holdover Proceeding. Petitioner discontinued [*2]the Prior Holdover Proceeding as of August 15, 2019.
Manny Stein ("the Managing Agent") testified that he learned that the Prior Tenants were not living in the subject premises in the Prior Holdover Proceeding.
The Managing Agent testified on cross-examination that he does not know Respondents; that he does not have an ownership stake in Petitioner; that the super of the building in which the subject premises is located ("the Building") is named Marc Contreras; that Joseph Minaya ("the Super") lives at a different address but works at the Building; that he knows that the Prior Holdover Proceeding was a nuisance holdover proceeding alleging noise; that he named the Prior Tenants as respondents in the Prior Holdover Proceeding because they were the tenants of record; that there were no other tenants of the subject premises; that the Prior Tenants have been living in the subject premises since about 2000; that the Prior Tenants had children; that he does not recall the disposition of the Prior Holdover Proceeding; that the Prior Tenants did not surrender possession of the subject premises; that he did not name the Prior Tenants as parties to this proceeding because he understood that the Prior Tenants were not living there based on what he heard in the Prior Holdover Proceeding; that the Prior Tenant died; that he has been in the subject premises; that he was last in the subject premises pre-Covid, maybe to check on repairs; and that he does not remember if he met the Prior Tenant.
The Court took judicial notice of the digital recording of a Court appearance on the Prior Proceeding on August 23, 2018. In open Court that day, Respondent stated that the Prior Tenants did not live in the subject premises and that he did not know if Petitioner knew that the Prior Tenants were no longer there.
The parties stipulated that Respondent is the son of the Prior Co-Tenant, that Co-Respondent is the son of the Prior Tenant and the Prior Co-Tenant, and that Petitioner accepted an Emergency Rent Assistance Payment on Respondent's behalf in June of 2022, which was during the pendency of this proceeding.
Respondent submitted into evidence his W-2 forms for 2007, 2012, 2013, 2014, 2018, his tax returns for 2015, 2017, and 2018, his driver's license issued on March 11, 2017, and his school records from 2002 through 2005, all of which list the subject premises as his address. Respondent submitted into evidence an Order of Custody and Visitation dated June 2, 2008 from a Family Court proceeding with the index number V-04670-08 (Fam. Ct. NY Co. 2008), which stated that the Prior Co-Tenant has custody of Co-Respondent.
Respondent submitted into evidence the death certificate the Prior Tenant, which shows that the Prior Tenant died on August 6, 2019, that subject premises was his address, that the informant was Co-Respondent, that Co-Respondent's address was the subject premises, and that Co-Respondent is the Prior Tenant's son.
Co-Respondent submitted into evidence his school records from 2010 through 2014, cable bills in Co-Respondent's name from 2018, and Co-Respondent's bank statements from 2018, all of which show the subject premises as Co-Respondent's address. Co-Respondent submitted into evidence a letter dated February 1, 2019 showing that Co-Respondent requested paid family leave for care for a family member. The letter shows the subject premises as Co-Respondent's address.
Respondent testified that the Prior Tenant was his stepfather; that he was born in the Dominican Republic; that he moved to the U.S. in 1994; that they moved to Harlem, on 135th Street and Broadway, for a year or two; that they then moved to the subject premises; that he lived with his aunt; that they were living with the Super; that he moved into the subject premises [*3]in 2000; that he has not lived with anyone else; that he lived with the Prior Tenant and the Prior Co-Tenant and his sister; that the Super was in a community with his family; that the Super was a big part of them growing up; that they had a barbecue in the basement; that they celebrated New Year's together; that the Super watched him grow up; that he and the Super have had meals in each other's apartments; that the relationship with the Super started when he moved into a different apartment in the Building in 1997; that no one else lived with him in the subject premises; that he went to three schools in the area, P.S. 161, Annunciation, and Norman Thomas; that he worked while living in the subject premises; that he received the W-2's at the subject premises; that the Prior Co-Tenant moved out in 2006, but he did not remember for sure; that he does not know where the Prior Co-Tenant lives; that the Prior Tenant did not fully vacate the subject premises, but maintained a room with his personal items; that the Prior Tenant died in 2019; that the Prior Tenant had a stroke and was hospitalized; that the Prior Tenant went to the subject premises until the Prior Tenant died; that he and Co-Respondent would take care of the Prior Tenant; that the Prior Tenant drank too much; and that the Prior Tenant would disappear and then return to the subject premises.
Respondent testified on cross-examination that his aunt and uncle and grandmother and cousins live in various apartments at 419 West 129th Street, which is around the corner from the subject premises, that the Prior Tenant was his stepfather; that the Prior Co-Tenant was his mother; that he does not have a marriage certificate; that the Prior Tenant and the Prior Co-Tenant never married; that the Prior Tenant worked at a supermarket in Washington Heights before he was impaired in 2018; that he does not remember the exact address of the supermarket; that the name of the supermarket was "Bravo"; that the Prior Tenant lost all sense of his right side; that the Prior Tenant did not work with this impairment; that he is not sure when the Prior Tenant stopped working; that the Prior Tenant did not have another home; that the Prior Tenant would not return because of his drinking problem; that if he knew how the drinking and the Prior Tenant's failure to come home were related he would have a better relationship with the Prior Tenant; that this drinking problem continued throughout his childhood; that the Prior Tenant would not come home for two days maximum a month; that it got worse as the Prior Tenant got older; that he remembered the Prior Holdover Proceeding; that the Prior Tenant was a named respondent in the Prior Holdover Proceeding; that the Prior Tenant did not show up for that case; that he showed up for that case; that they were by themselves at that time; that the Prior Tenant was living there; that the Prior Tenant was not showing because of his alcoholism problem; that in July of 2018 the Prior Tenant was hospitalized; that he alerted the Court that the Prior Tenant was hospitalized; that when he stated on the record in the Prior Holdover Proceeding that the Prior Tenant had not lived there for five years he was very nervous and he had not been to Court; that he was confused about what he was saying at the time; that he was not confident about his answer; that being nervous does not cause him not to tell the truth; that he was not nervous at the time of his testimony in the trial in this matter; that that Court date in the Prior Holdover Proceeding was the first time that he was in that situation; that the Prior Tenant was in the hospital around the same time that the Prior Holdover Proceeding started; that he informed the Court the second time of the hospitalization; that the Prior Tenant went into the hospital in 2018; that the Prior Tenant fell down the stairs in the subway; that the Prior Tenant had a stroke after the Prior Tenant fell; that the Prior Co-Tenant signed the most recent lease; that he recognized her signature on the lease; that Prior Co-Tenant vacated around 2016; that he does not remember the exact time; that he was wrong to say 2006; that he could not remember the exact date; that he [*4]has not spoken to the Prior Co-Tenant since she left; that he is not familiar with an address in Lawrence, Massachusetts; that he tried to find the Prior Co-Tenant; and that he could not find her.
Respondent testified on redirect examination that he was not sworn in when he made a statement to the Court about the Prior Tenant in the Prior Holdover Proceeding and that he was speaking in approximations.
Co-Respondent testified that the Prior Tenant was his father; that the Prior Co-Tenant is his mother; that he lived in the subject premises his entire life; that in 2018 the Prior Tenant had an accident in the subway; that there were health complications; that the Prior Tenant died in 2019; that the Prior Tenant was living in the subject premises until he died; and that he and Respondent took care of the Prior Tenant in his dying days. Respondent submitted into evidence a photograph the Prior Tenant taken in the subject premises in 2018 or 2019 ("the Photograph").
Co-Respondent testified on cross-examination that the Prior Tenant worked in many different supermarkets; that he did not appear in Court in the Prior Holdover Proceeding; that he did not think that he needed to; that he did not have communication with the Prior Tenant; that the Prior Tenant was in and out; that the Prior Tenant was not around; that the Prior Tenant was missing for a time period, the duration of which he did not recall; that he did not know where the Prior Tenant was for full-year time spans in 2017 and 2018; that he did not know who signed leases; and that the Prior Co-Tenant signed the most recent lease because that it was it says.
Co-Respondent testified on redirect examination that his relationship with the Prior Tenant was far from normal; that they did not have normal father-son communications; that the Prior Tenant did his best; that their communication deteriorated over time because of the Prior Tenant's alcoholism; that he does not know if the Prior Tenant slept on the street; that the Prior Tenant did not have other mental incapacities that he knew of; that the Prior Tenant was in and out of the subject premises transiently; that the Prior Tenant did not remove his personal property; that he always welcomed the Prior Tenant back because the subject premises was the Prior Tenant's home; that his relationship with the super was the same as Respondent's; that he knows the super's children; and that the Super is in the other building.
Graciela Lazaro ("Respondents' Sister") testified that she lives in Yonkers; that she is Respondents' sister; that they share a mother; that she and Co-Respondent share a father; that the Prior Co-Tenant is her mother; that the Prior Tenant was her father; that she grew up in the subject premises; that she lived in the subject premises with Respondents and her other siblings; that she moved in 2017 or 2018; that Respondents have not moved out since they moved in; that the Prior Tenants do not live in the subject premises; that the Prior Co-Tenant left the subject premises in 2017; that she moved out after the Prior Tenant died; that she does not recall when the Prior Tenant moved out because Respondents kept her from certain situations; that she does not remember dates and times; that the Prior Tenant was living in the subject premises when he died; that when the Prior Tenant was at the end of his life he was immobile and needed someone to take care of him; that Co-Respondent took care of the Prior Tenant; that she has known the Super for her entire life; that the Super has a relationship with her entire family that her family has had parties with the Super; that her grandmother and aunts and uncles live in the Building and around the block; that she went to P.S. 129 and P.S. 161; that she went to East Harlem; and that she went to an academy on Delancey Street.
Respondents' Sister testified on cross-examination that she moved out of the subject premises after the Prior Tenant died in 2019; that the Prior Tenant died on August 6, 2019; that [*5]the Prior Tenant was home most of the time; that the Prior Tenant was a working person; that the Prior Tenant was not out of the subject premises for long stretches of time; that the Prior Tenant had an addiction problem; that she just remembers blurs; that the Prior Tenant was an alcoholic and had a bad accident; that she would do anything to help Respondents; that her testimony is a part of that; that Respondents worked at a reception firm; that her other brother worked at a school in Riverdale and now works somewhere else; that she does not remember eviction cases in Housing Court; that she remembered Respondents having to go to Court; that she was left out of conversations about these things; that she moved out before the Prior Tenant died; that she visited the Prior Tenant every day or every other day; and that it is hard for her to testify about 2017 and 2018 because she was young.
Respondents' Sister testified on redirect examination that she was asleep at night and that the Prior Tenant would tuck her in at night.
The Super testified that he lives at the basement of the Building; that he knows Respondents because they were living in the Building for twenty-five years; that he knows the Prior Tenants; that he is the super; that he rented the subject premises to them before 2000; that the Prior Co-Tenant moved in at the time; that the Prior Tenant, whose name he did not remember, moved in; that Respondent moved in also; that the other one was born in 1999; that Respondents' Sister moved in too; that he did not remember if Respondent moved away from the subject premises, but he did not think so; that Co-Respondent moved for some time; that Co-Respondent has been there for a long time, about five or six years; that Co-Respondent moved away from the subject premises for about seven or eight years; that the Prior Tenant was in the hospital for some time; that he remembers the Prior Tenant living in the subject premises after he left the hospital; that the Prior Tenant passed away in 2020; that he has been to the subject premises; that the Photograph in evidence depicts the Prior Tenant in the bedroom of the subject premises; and that the Prior Tenant lived in the subject premises after the Prior Tenant came home from the hospital.
The Super testified on Co-Respondent's cross-examination that he is a friend of the family; that he has helped them find homes; that all of them live in the Building because he is the one who took them there; and that everyone has stayed in the apartments.
The Super testified on Petitioner's cross-examination that the Prior Co-Tenant does not live in the subject premises now; that the Prior Co-Tenant lived in the subject premises; that the Prior Co-Tenant left about seven or eight years ago; that the Prior Tenant did not always live in the subject premises until the Prior Tenant died because the Prior Tenant had an accident and was in hospitals for like two years; and that the Prior Tenant lived in the subject premises before his accident.
Discussion
A family member can succeed to a Rent-Stabilized tenancy if the family member resided with the tenant for two years immediately preceding the permanent vacatur of the tenant, "permanent vacatur" meaning the date when the tenant permanently stops residing in the housing accommodation. Public Housing Law §14(4)(a), 9 N.Y.C.R.R. §2523.5(b)(2).
A "tenant" includes any person "or persons" named on a lease as lessee "or lessees". 9 N.Y.C.R.R. §2520.6(d)(emphasis added). As the Prior Tenants were co-tenants, both named on the leases, the characteristics of a co-tenancy inform the determination of a permanent vacatur date. A co-tenant has a legal right to be present in the demised premises without the consent of the other co-tenant, Preferred Mut. Ins. Co. v Pine, 44 AD3d 636, 639 (2nd Dept. 2007), whether [*6]or not the co-tenant is in actual possession of the subject premises. Butler v. Rafferty, 100 NY2d 265, 269 (2003).[FN1]
The Prior Tenants' co-tenancy therefore occasions an inquiry into the dates by which both of the Prior Tenants stopped residing in the subject premises.
The testimonial evidence concerning the date that the Prior Co-Tenant moved out was roughly consistent. Respondent testified that the Prior Co-Tenant moved out in 2016. Respondents' Sister testified that the Prior Co-Tenant moved out in 2017. The Super testified that the Prior Co-Tenant moved out seven or eight years prior to his testimony, which was in 2024.
The record is more ambiguous regarding the Prior Tenant. On August 23, 2018 Respondent stated in a conference in open Court that the Prior Tenants had not been living in the subject premises. Co-Respondent testified that he did not know where the Prior Tenant was for full-year time spans in 2017 and 2018. The testimony of Respondents' Sister was not reliable, as she was unable to recall dates.
The documentary evidence, however, i.e., the Prior Tenant's death certificate, shows the subject premises as the Prior Tenant's address at the time of his passing on August 6, 2019. More persuasive than that is the testimony of the Super, who was a disinterested witness. The Super testified that the Prior Tenant's accident and hospitalization is what occasioned the Prior Tenant's absence from the subject premises, which would not implicate a date of permanent vacatur. 9 N.Y.C.R.R. §2523.5(b)(2)(v). The Super further testified that the Prior Tenant lived in the subject premises both before the Prior Tenant's accident and after the Prior Tenant left the hospital.
The Prior Tenant's life appears to have been messy, and his occupancy of the subject premises does not appear to have been conducive with a clean break between one day of residing in the subject premises and one day of moving out. The concept of a "permanent vacatur date" under the Rent Stabilization Code is a legal construct that does not necessarily align neatly with the uncertainties often inherent in the decisions people make in real life, SF 878 E. 176th, LLC v. Molina, 65 Misc 3d 1216(A)(Civ. Ct. Bronx Co. 2019), uncertainties that can make it impossible to identify a precise permanent vacatur date. 700 Bklyn Realty, LLC v. Samuel, 69 Misc 3d 126(A)(App. Term 2nd Dept. 2020), EB Bedford LLC v. Lee, 64 Misc 3d 39, 42 (App. Term 2nd Dept. 2019).
Throughout this time that the Prior Tenant was in and out of the subject premises as such, and before that, the documentary evidence in the record placed both Respondent and Co-Respondent in the subject premises. The exhibits that Respondent moved into the record that demonstrated his residence at the subject premises back to 2002 include W-2 forms, Columbus Manor, LLC v. Turnbull, 63 Misc 3d 143(A)(App. Term 1st Dept. 2019), tax returns, Glenbriar Co. v. Lipsman, 5 NY3d 388, 392-393 (2005), Second 82nd Corp. v. Veiders, 146 AD3d 696 (1st Dept. 2017), a driver's license, Glenbriar Co., supra, 5 NY3d at 392-393 and school records, Tabak v. Steele, 38 AD3d 244 (1st Dept.), reversing Tabak v. Steele, 8 Misc 3d 78 (App. Term 1st Dept. 2005) as per the dissenting opinion of Suarez, J., appeal dismissed, 9 NY3d 918 (2007), Santorini Equities v. Picarra, 19 Misc 3d 137(A)(App. Term 1st Dept. 2008). Similarly, [*7]Co-Respondent's documentary exhibits, including a Court order concerning custody from when Co-Respondent was a minor, school records, cable bills, and the Prior Tenant's death certificate, place him in the subject premises from at least 2008 through the present date. Respondents' long residency of the subject premises compels the conclusion that they have remained in the subject premises at least two years before any conceivable date that either of the Prior Tenants could be deemed to have vacated, the earliest of which would be about 2016. Regulations providing for succession rights serve the important remedial purpose of preventing dislocation of long-term residents due to the vacatur of the head of household. Jourdain v. NY State Div. of Hous. & Community Renewal, 159 AD3d 41, 45 (2nd Dept. 2018), citing Murphy v. NY State Div. of Hous. & Community Renewal, 21 NY3d 649, 653 (2013). This policy underscores the point that a lack of precision as to a date of permanent vacatur fails to add up to a compelling reason to deny succession to a family member who had been residing in a unit for a long period of time with a tenant. Compare Pers Realty LLC v. Granville, 73 Misc 3d 121(A)(Civ. Ct. Kings Co. 2021).
In the absence of a marriage certificate in the record between the Prior Tenants, Respondent cannot show that he was the stepson of the Prior Tenant, and can only show that he was a family member of the Prior Co-Tenant. However, as noted above, the tenants in a co-tenancy have an entitlement to occupancy independent of one another. Butler, supra, 100 NY2d at 269, Preferred Mut. Ins. Co., supra, 44 AD3d at 639. It follows that the successors to co-tenants have an independent entitlement to occupancy even if the co-tenants permanently vacated at different times.[FN2]

As both Respondent and Co-Respondent were family members of the Prior Tenants, and as they both resided with the Prior Tenants for two years before any conceivable time that the Prior Tenants have permanently vacated, it is ordered that the Court dismisses this holdover proceeding, as Respondents are not licensees but are entitled to renewal lease under the Rent Stabilization Law.
This constitutes the decision and order of the Court.
Dated: New York, New York
May 8, 2024
HON. JACK STOLLER
J.H.C.

Footnotes

Footnote 1:Butler, supra, concerns tenants in common who are titleholders, not leaseholders. However, propositions related to tenants in common also apply to leaseholders. See, e.g., Rosenthal v. Mahler, 141 AD2d 625, 628 (2nd Dept. 1988).

Footnote 2:If more than one family member meets the criteria to succeed to a rent-regulated tenancy, they may both do so. See, e.g., 90 Elizabeth Apt. LLC v. Eng, 58 Misc 3d 300, 310 (Civ. Ct. NY Co. 2017).